### Ex parte Ricky Eugene MORROW.

### No. 72593.

Court of Criminal Appeals of Texas, En Banc.

May 21, 1997.

Rehearing Denied Oct. 1, 1997.

**532**

· Randy Schaffer, Houston, for appellant.

Sue Korioth, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

## OPINION

MANSFIELD, Judge.

We ordered applicant Ricky Eugene Morrow's post-conviction application for writ of habeas corpus filed and set for submission to consider whether his guilty pleas were involuntary.[1] Pursuant to a plea bargain, applicant pleaded guilty to, and was convicted of, an aggravated robbery and two attempted capital murders. Applicant was then sentenced to three fifty-year concurrent sentences. No appeal was taken. Applicant now contends his guilty pleas were involuntary because: (1) the pleas were improperly induced by the State's offer to return money that belonged to him, and (2) he received ineffective assistance of counsel.[2] Applicant requests that this Court "grant a writ of habeas corpus and order the State to show cause why applicant should not be granted a new trial." We will deny relief.

### Relevant Facts

The convicting court held an evidentiary hearing on applicant's claims and made findings of fact. See Tex.Code Crim. Proc. art 11.07, § 2(d). Those findings, in pertinent part, are as follows: On January 19, 1982, applicant and his common-law wife, Linda Ferguson, went to a Dallas pawn shop and purchased two pistols. That afternoon they went to a Dallas bank. While Ferguson waited in the car, applicant went inside the bank and committed a robbery. Applicant and Ferguson then proceeded to a second bank. While Ferguson again waited in the

---

1. See Article 11.07 of the Texas Code of Criminal Procedure.

2. This argument of ineffective assistance of counsel is premised on three contentions worded as follows: (1) Counsel advised applicant that the guilty pleas and convictions would have no adverse effect if applicant obtained a reversal of his capital murder conviction and was retried; (2) Counsel failed to obtain the State's agreement that if applicant's capital murder conviction was reversed, and applicant was retried, the convictions for attempted capital murder and aggravated robbery would not be used against him at retrial; and (3) Counsel had a conflict of interest because counsel would receive part of the money that would be returned as part of the plea bargain if applicant plead[ed] guilty.

car, applicant went inside and committed a second robbery, during which he shot and killed a bank employee. The two fled to a nearby motel and checked into a room with their weapons and proceeds from the two bank robberies. Within minutes, after a police officer observed their car in the motel parking lot, their room was surrounded by police officers demanding their surrender. Ferguson surrendered voluntarily. Applicant refused and remained inside the motel room. After applicant fired two shots,[3] the police responded with a barrage of gunfire into the motel room. Applicant subsequently surrendered and was arrested.

Applicant was charged as follows: capital murder (cause no. F–82–83550); aggravated robbery (cause no. F–82–83706); and two attempted capital murders of the officers who were surrounding applicant's motel room (cause nos. F–82–82402, F–82–82403). The trial court appointed counsel who remained applicant's counsel during the disposition of all four cases.

The capital murder charge was disposed of first. Applicant was tried and convicted of capital murder (cause no. F–82–83550). On November 9, 1983, the jury assessed his punishment at death. Direct appeal to this Court was automatic.

On November 23, 1983, while the above conviction was on appeal, applicant entered into a plea bargain to dispose of the remaining charges of aggravated robbery and two attempted capital murders. Pursuant to the plea bargain, applicant pleaded guilty to each of the three charges. In return, applicant received three fifty-year sentences, which were to run concurrently, and all funds seized from him and Ferguson that were not related to the two bank robberies were to be returned to him.

On March 30, 1988, this Court reversed applicant's capital murder conviction. *Morrow v. State*, 753 S.W.2d 372 (Tex.Cr.App. 1988). The trial court appointed new counsel to represent applicant at his retrial, which

began in 1990. During this second trial, applicant testified on his own behalf at the guilt-innocence stage. When he testified as to the facts surrounding the two attempted capital murders and aggravated robbery, the State offered evidence of his judicial confessions, guilty pleas, convictions and fifty-year sentences to impeach his testimony. Likewise, such pleas, confessions, convictions, and sentences were used as evidence of applicant's prior criminal record at the punishment stage. Applicant was again convicted of capital murder and his punishment assessed at death. Applicant now challenges the voluntariness of his guilty pleas in the two attempted capital murders and the aggravated robbery case.

*"Involuntariness" under T.C.C.P article 26.13(b)*

Applicant contends his three guilty pleas were "involuntary" because they were improperly induced by the State's promise to return his money as part of the plea bargain. Applicant submits that the plea bargain was premised on the State's promise to return to him all the money seized from him and Ferguson that was not related to the two bank robberies. Applicant claims "he agreed to accept the plea bargain primarily to obtain the return of the money which he believed to be approximately $5,000.00."

Applicant's testimony at the habeas corpus hearing reflects he was persistent in trying to get the money returned even before the plea bargaining process began. Applicant testified that as early as the first interview with his court-appointed counsel, he was "trying to get that money back."

Applicant's counsel testified that he believed the State's promise to return applicant's money was not the reason applicant pled guilty. Counsel testified that although he did not know for sure applicant's reason for pleading guilty, counsel was certain the money was not a "quid pro quo for applicant's plea of guilty." Finally, counsel stated

---

3. Whether applicant fired two shots at the officers with the intent to kill them is now in dispute. Applicant pleaded guilty to two attempted capital murders, pursuant to a plea bargain. However, at his re-trial for capital murder, appli-

cant testified that he did not shoot at the officers with the intent to kill them, but rather, he shot two bullets into the ceiling of the closet where he was hiding, thereby provoking the police officers to shoot and kill him.

that *applicant* insisted that counsel get the State to agree to return the money as part of the plea bargain.

Likewise, the assistant district attorney who negotiated the plea bargain with applicant's counsel testified that he believed the money was not used as an inducement for applicant to plead guilty. The assistant district attorney testified that "it was applicant's property and he was going to get it back."

The trial court began its analysis of applicant's claim by finding that the "the trial court in each of the guilty plea hearings properly admonished applicant of the consequences of the guilty pleas, accepted applicant's guilty pleas as voluntarily and intelligently entered based upon those admonishments, and sentenced applicant in accord with the plea bargain."[4] The trial court, relying on the testimony of applicant's counsel and the prosecuting district attorney, found that although the plea bargain included a provision dealing with the return of money, the plea bargain was not *predicated* on the return of money, and applicant's decision to plead guilty was based on the evaluation of several factors, including "the surety of conviction based on the evidence available to the State, the beneficial offer by the State of the less-than-maximum concurrent sentences, and the necessity to dispose of the cases." In addition, the trial court found that, contrary to applicant's contention, the *State* did not "induce" the pleas by offering to return money, but rather it was *applicant* who insisted that the provision regarding the return of money be included in the plea bargain.

Article 26.13(b) of the Texas Code of Criminal Procedure provides that no plea of guilty or plea of nolo contendere shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary. The purpose and function of Article 26.13 are to ensure that only a constitutionally valid plea is entered and accepted by the trial court. *See Meyers v. State,* 623 S.W.2d 397 (Tex.Cr.App.1981). In *Ex parte Shuflin,* 528 S.W.2d 610, 615 (Tex.Cr.App.1975), this Court, citing *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), recognized the requirements of a constitutionally valid plea of guilty:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes). *Brady v. United States,* 397 U.S. at 755, 90 S.Ct. at 1472.

In addition, in a post-conviction habeas corpus hearing, the burden of proof is upon the applicant. *Ex parte Slaton,* 484 S.W.2d 102 (Tex.Cr.App.1972). This Court is not bound by the findings of the trial judge in post-conviction habeas corpus proceedings. *Ex parte Adams,* 707 S.W.2d 646 (Tex.Cr. App.1986); *Ex parte Williams,* 486 S.W.2d 566 (Tex.Cr.App.1972). But such findings are considered, if supported by the record. *Ex parte Hurd,* 613 S.W.2d 742 (Tex.Cr.App. 1981).

In the instant case, the plea papers show, among other things, that one of the provisions of the plea bargain stated that all funds seized from applicant and Ferguson would be returned to applicant. However, the *mere inclusion* of such a provision in the

---

4. The record shows applicant pleaded guilty and signed judicial confessions. In each corresponding judgment, the pertinent language reads as follows:

"... before the Defendant entered his plea herein, the Defendant was arraigned and in open Court pleaded GUILTY to the charge contained in the indictment; thereupon the Defendant was admonished by the Court of the consequences of the said plea, and the Defen-

dant persisted in entering said plea, and in plainly appearing to the Court that the Defendant is mentally competent and that he is *uninfluenced in making said plea by any consideration of fear, or by any persuasion,* or delusive hope of pardon prompting him to confess his guilt, the said plea was accepted by the Court and is now entered of record as the plea herein of the Defendant."

plea bargain does not render applicant's pleas "involuntary." After all, at one level most pleas of guilty or nolo contendere are induced because they are entered to avoid more severe possible sentences upon a conviction following trial. See George E. Dix & Robert O. Dawson, *Criminal Practice and Procedure*, ch. 34, § 34.45, p. 407. Therefore, a showing of an inducement beyond that implicit in the plea bargaining process must be made to prevail on a claim that the pleas were "involuntary" because they were improperly induced. *Id.*

From the record before us, applicant has failed to prove by a preponderance of the evidence that his guilty pleas were "involuntary" because they were induced by threats, misrepresentations or improper promises. *Brady*, 397 U.S. at 755, 90 S.Ct. at 1472. On the other hand, the record does support the trial court's findings that applicant's guilty pleas were not predicated on the return of money but were the result of an informed decision based on the evaluation of several factors. *See Ex parte Adams*, 707 S.W.2d 646 (Tex.Cr.App.1986); *Ex parte Hurd*, 613 S.W.2d 742 (Tex.Cr.App.1981); *Ex parte Williams*, 486 S.W.2d 566 (Tex.Cr.App.1972). Applicant's first ground for relief is denied.

### *"Involuntariness" under the Sixth Amendment*

We turn next to the question whether applicant's guilty pleas were involuntary because he received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.[5]

5. Applicant presents three arguments in support of his claim of ineffective assistance of counsel. They are worded as follows: "(1) Counsel *advised* applicant that the guilty pleas and convictions would have no adverse effect if applicant obtained a reversal of his capital murder conviction and was retried; (2) Counsel *failed to obtain* the State's agreement that if applicant's capital murder conviction was reversed, and applicant was retried, the convictions for attempted capital murder and aggravated robbery would not be used against him at retrial; and (3) Counsel had a *conflict of interest* because counsel would receive part of the money that would be returned as part of the plea bargain if applicant plead[ed] guilty."(emphasis added) Application for Writ of Habeas Corpus). We will address each argument separately.

Applicant claims first that defense counsel was ineffective for failing to accurately advise him of the possible "adverse consequences" his three guilty pleas would have in the event his capital murder case was reversed and retried.[6]

Applicant alleges counsel failed to inform him prior to the entry of his guilty pleas, that such pleas could be used at a potential capital murder retrial to:

(1) impeach applicant; (2) rebut applicant's testimony that he did not intend to shoot at or intend to kill the police officers; (3) rebut, through inferences, applicant's testimony that he did not intentionally shoot the victim of the capital murder; (4) as evidence of applicant's prior criminal record to support an affirmative answer to the special issue regarding future dangerousness; and (5) support the prosecution's argument that applicant should be given the death penalty because he was already serving three, fifty-year concurrent sentences, and therefore, to give him a life sentence would be no real punishment at all. (Application for writ of habeas corpus, p. 14).

The State submits "applicant failed to prove his pleas were involuntary as a result of any failure by counsel to inform him of the possible use of his convictions in a separate, possible, future proceeding, because such use is a 'collateral consequence,' ignorance of which does not render the pleas involuntary." We agree.

6. In effect, applicant asks us to decide the broader question of: whether a lawyer, when representing a client charged with both capital and non-capital cases, has a duty to explain the effect of guilty pleas in the non-capital cases on the capital case? However, that question is not properly before this Court because applicant stood convicted, with such conviction on appeal, at the time he entered his guilty pleas, and therefore such charges were not "pending." If such cases were "pending," it is *arguable* that counsel would have had a duty to inform applicant of the State's possible use of such guilty pleas and judicial confessions.

The Sixth Amendment provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This right is not merely to the assistance of counsel, but rather to the reasonably effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). This right to the reasonably effective assistance of counsel applies at the time a defendant is called upon to enter his plea to a felony charge. *McMann v. Richardson,* 397 U.S. 759, 770–71, 90 S.Ct. 1441, 1448–49, 25 L.Ed.2d 763 (1970).

However, courts have also held that while the Sixth Amendment assures an accused of effective assistance of counsel in criminal prosecutions, this assurance does not extend to "collateral" aspects of the prosecution. *Varela v. Kaiser,* 976 F.2d 1357 (10th Cir.1992), *cert. denied,* 507 U.S. 1039, 113 S.Ct. 1869, 123 L.Ed.2d 489 (1993). A consequence is "collateral" if it is not a definite, practical consequence of a defendant's guilty plea. *See Cuthrell v. Director, Patuxent Institution,* 475 F.2d 1364, 1366 (4th Cir.1973), *cert. denied,* 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973). Courts have characterized deportation, *United States v. Campbell,* 778 F.2d 764 (11th Cir. 1985); possible enhancement of punishment, *United States v. Lambros,* 544 F.2d 962 (8th Cir.1976), *cert. denied,* 430 U.S. 930, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977); institution ·of separate civil proceedings against defendant for commitment to mental health facility, *Cuthrell v. Director, Patuxent Institution,* 475 F.2d at 1366; loss of good time credit, *Hutchison v. United States,* 450 F.2d 930, 931 (10th Cir.1971); possibility of imposition of consecutive sentences, *United States v. Vermeulen,* 436 F.2d 72, 75 (2nd Cir.1970), *cert. denied,* 402 U.S. 911, 91 S.Ct. 1390, 28 L.Ed.2d 653 (1971); deprivation of rights to vote and to travel abroad, *Meaton v. United States,* 328 F.2d 379 (5th Cir.1964), *cert. denied,* 380 U.S. 916, 85 S.Ct. 902, 13 L.Ed.2d 801 (1965); deprivation of the right to vote in some jurisdictions, *United States v. Cariola,* 323 F.2d 180 (3rd Cir.1963); and the possibility of undesirable discharge from the armed forces, *Redwine v. Zuckert,* 115 U.S.App.D.C.

130, 317 F.2d 336 (1963), as "collateral consequences" of which a defendant does not have to be knowledgeable before his plea is considered knowing and voluntary. *See Michel v. United States,* 507 F.2d 461, 465, n. 4. (2nd Cir.1974) (citations omitted). Therefore, when a defendant is fully advised of the direct consequences of her plea, her ignorance of a collateral consequence does not render the plea involuntary. *See United States v. Long,* 852 F.2d 975, 979–80 (7th Cir.1988).

When a defendant enters his plea upon the advice of counsel and subsequently challenges the voluntariness of that plea based on ineffective assistance of counsel, the voluntariness of such plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Strickland v. Washington,* supra; *McMann v. Richardson,* supra. Therefore, the question posed in the instant case is whether applicant has met his burden and proven that: (1) counsel's failure to inform applicant of the potential uses of his guilty pleas at a possible capital murder retrial was outside the range of competence demanded of attorneys in criminal cases; and (2) that but for defense counsel's errors, applicant would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. at 56, 106 S.Ct. at 369.

We conclude applicant has failed to meet the first prong of the *Hill v. Lockhart* test. We believe counsel was under no duty to inform applicant of the various ways his three guilty pleas could be used against him at a possible capital murder trial because such use is "collateral," and not a definite, practical consequence of his guilty pleas. *See Cuthrell v. Director, Patuxent Institution,* 475 F.2d at 1366. Applicant has not proven by a preponderance of the evidence that counsel's alleged failure to advise him, *ad infinitum,* of the various ways such guilty pleas could be used against him at a hypo-

thetical retrial, was "outside the wide range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart,* 474 U.S. at 56, 106 S.Ct. at 369. Accordingly, we conclude counsel's failure to advise applicant of the "collateral consequences" of his guilty pleas did not rise to the level of constitutionally ineffective assistance of counsel. *See United States v. Campbell,* 778 F.2d at 768. "To hold otherwise would place an unreasonable burden on defense counsel to ascertain and advise of the collateral consequences of a guilty plea which courts have uniformly held is not ineffective assistance of counsel." *United States v. Yearwood,* 863 F.2d 6 (4th Cir.1988) (citations omitted). "Although it is highly desirable that both state and federal counsel develop the practice of advising defendants of the collateral consequences of pleading guilty, it is not required by the Federal Constitution." *United States v. Campbell,* 778 F.2d at 765. Because applicant has failed to demonstrate error, we need not evaluate counsel's actions with respect to the second, "prejudice-prong" of the *Hill v. Lockhart* test.

■ Applicant alleges next that defense counsel was ineffective for failing to obtain a "non-use agreement" with the State wherein if applicant pleaded guilty the State would not use such guilty pleas, judicial confessions, and convictions against him in the event his capital murder case was reversed and retried. Applicant argues (1) that reasonably competent counsel would have ensured that a "non-use" provision was made part of the plea bargain, and (2) that if the State refused to include a "non-use" provision as part of the plea bargain, reasonably competent counsel would have notified applicant and advised applicant to reject such a plea bargain and applicant would not have pleaded guilty but would have insisted on going to trial.

Applicant's counsel testified at the habeas corpus hearing that he did not attempt to obtain a "non-use" provision in the plea bargain because at the time he represented applicant, he had never attempted to obtain such type of provision, nor had he ever heard of anyone in Dallas County ever obtaining such a condition in a plea bargain. He stated that such an agreement was not common-

place in Dallas County in 1983. Counsel testified that even if he would have obtained such an agreement, applicant still would not have been protected from the use of such convictions at a possible retrial. Counsel reasoned that if applicant testified at the guilt-innocent stage differently from what he signed in his judicial confessions, the "non-use" agreement would not prevent the State from impeaching applicant with such pleas and confessions. Furthermore, counsel contended the State would not need to use the plea agreement, guilty pleas, judicial confessions or convictions as direct evidence of the facts surrounding the three felonies because they could call witnesses to produce such facts. Finally, counsel testified that he did not think it necessary to get a "non-use" agreement because he "never imagined any competent counsel would put applicant on the stand to testify."

The assistant district attorney who negotiated the plea bargain also testified at the habeas corpus hearing. He testified that had applicant's counsel attempted to obtain a "non-use agreement" as a provision in the plea bargain he would not have agreed to such a request.

The trial court reasoned that because the facts and circumstances surrounding the contested offenses would have been admissible during both the guilt-innocent and punishment stages of the capital murder retrial with or without a "non-use agreement," counsel's attempt to secure such an agreement would have been futile. *See Mooney v. State,* 817 S.W.2d 693 (Tex.Cr.App.1991). Therefore, the trial court reasoned, counsel was not required to attempt to obtain such an agreement, because counsel is not required to perform futile acts to render effective assistance. *Id.* We agree.

We are not satisfied that applicant has sustained his burden with respect to the first prong of the *Hill v. Lockhart* test. Based on the testimony of applicant's counsel and the assistant district attorney, it would have been futile to attempt to obtain a "non-use agreement." The facts show that such a provision was uncommon and that even if such a provision was included in the plea bargain, applicant would still not have been protected from

the State's use of such information for impeachment purposes. Accordingly, applicant has not proven that counsel's failure to obtain a "non-use agreement" was "outside the wide range of competence demanded of attorneys in criminal cases." Because applicant has failed to meet the first prong of the *Hill v. Lockhart* test, we need not consider whether applicant has established "prejudice" as required by the second prong of *Hill v. Lockhart.*

Finally, applicant alleges counsel was ineffective because he had an actual conflict of interest. Applicant claims he and counsel entered into a contingency-fee type agreement, whereby counsel would receive 40% of the money applicant would receive pursuant to the plea bargain. Applicant contends counsel's financial interest in applicant accepting the plea bargain created a disincentive to provide any advice that might cause applicant to reject the plea bargain.

As noted previously, applicant's counsel testified at the habeas corpus hearing. Counsel categorically denied ever having a contingency-fee agreement with applicant. Counsel's testimony reflects that he made every effort to obtain the return of the money on applicant's behalf because *applicant* was insistent and feared going to prison without any money.

The trial court, in its findings of fact and conclusions of law, found applicant's claims alleging counsel had an actual conflict of interest at the time applicant entered his guilty pleas to be incredible. The court stated applicant had not established an actual conflict of interest or proven that if any money was kept by counsel, that it was kept under the terms of a contingency-fee agreement.

■ Ineffective assistance of counsel may result from an attorney's conflict of interest. *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984). An "actual conflict of interest" exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps his own) to the detriment of his client's interest. *James v. State,* 763 S.W.2d 776, 779 (Tex.Cr.App.1989). In order for a defendant

to demonstrate a violation of his right to the reasonably effective assistance of counsel based on a conflict of interest, he must show (1) that defense counsel was actively representing conflicting interests, and (2) that the conflict had an adverse effect on specific instances of counsel's performance. *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

■ Based on the record, it can not be said that applicant has met his burden of establishing an actual conflict of interest pursuant to the first prong of the *Cuyler v. Sullivan* test. Applicant has failed to demonstrate counsel was "actively representing conflicting interests." *Cuyler,* 446 U.S. at 348–50, 100 S.Ct. at 1718–19. On the contrary, the record shows, counsel acted zealously in attempting to secure the return of all monies which were to be returned to applicant pursuant to the plea bargain. The record shows that from around November 1983 to January 1984 counsel was in communication with the Dallas County District Attorney's office and the Dallas Police Department in an effort to obtain the $5,000.00 applicant believed he possessed at the time of his arrest. The record shows counsel acted in the interest of applicant and not out of his own. Accordingly, we are satisfied that the trial court's findings and conclusions are supported by the record and we therefore adopt such findings and conclusions with respect to applicant's allegation that counsel had an actual conflict of interest and a contingency-fee agreement. See *Ex parte Adams, supra,* at 648.

For these reasons, we hold applicant has failed to carry his burden of proving his pleas were involuntary because they were improperly induced by the State's promise to return his money as part of the plea bargain, or because he received ineffective assistance of counsel.

All relief prayed for is denied.

KELLER, J., not participating.

BAIRD, Judge, dissenting.

According to the majority, counsel was not ineffective for failing to inform applicant of

the consequences of his guilty pleas because those consequences were collateral, not direct. However, in reaching that conclusion, the majority fails to conduct any analysis regarding what constitutes a direct versus a collateral consequence. After conducting such an analysis, it becomes clear that the majority opinion is flawed in two respects: first, the consequences of applicant's guilty pleas were direct, not collateral; and, second, even if they were collateral, counsel was nevertheless ineffective for not advising applicant of those consequences.

## I. Factual Summary

Applicant pled guilty to the instant charges while his capital murder case was pending on direct appeal, and was sentenced to three concurrent 50–year sentences. Applicant contends that counsel was ineffective in failing to advise applicant the pleas could be used against him in the event his capital murder case was reversed and retried.

We initially remanded this application to the trial court to conduct an evidentiary hearing. At the hearing, counsel testified that he did not think the pleas were dangerous and he did not see any potential adverse effects to them. Counsel also testified he did not tell applicant the pleas could be used for impeachment if applicant testified at the retrial of his capital case. Finally, counsel testified he did not tell applicant that the pleas could be used by the State at a retrial to argue that a life sentence would not constitute punishment because applicant was already serving a 50–year sentence. Another lawyer testified that counsel said he (counsel) did not consider the consequences of the pleas in the event the capital case was reversed and retried, and if he (counsel) had considered such consequences, he would not have advised applicant to plead guilty.

## II. Consequences Not Collateral

The instant case presents an issue of first impression in Texas, but many foreign jurisdictions have addressed the issue. The Fourth Circuit has held that when a defendant pleads guilty, the trial court need only advise the defendant of the direct consequences of the plea and not any collateral consequences. *Cuthrell v. Dir., Patuxent Inst.*, 475 F.2d 1364, 1366 (4th Cir.1973). The *Cuthrell* Court concluded: "The distinction between direct and collateral consequences of a plea ... turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Id.* Several state courts have followed the *Cuthrell* standard in determining whether a consequence is direct or collateral. *See, e.g., Matter of Paschke*, 80 Wash.App. 439, 444, 909 P.2d 1328, 1331 (Wash.App. Div. 3 1996); *State v. Dugan*, 193 Wis.2d 610, 618, 534 N.W.2d 897, 900 (Wis. App.1995); *Adkins v. State*, 911 S.W.2d 334, 350 (Tenn.Cr.App.1994); *State v. Wika*, 464 N.W.2d 630, 634 (S.D.1991); *State v. Smith*, 207 Conn. 152, 160, 540 A.2d 679, 685 (Conn. 1988); *Saadiq v. State*, 387 N.W.2d 315, 325 (Iowa 1986). Professor LaFave notes that the *Cuthrell* test is the usual, "albeit not foolproof," test for determining whether a consequence is direct or collateral. LaFave, Criminal Procedure, Vol. II, § 20.4(d).

While the line between direct and collateral consequences is not easily drawn, *Torrey v. Estelle*, 842 F.2d 234, 236, 238 (9th Cir. 1988) (Canby, J., dissenting), and labels are not helpful in making the determination, *People v. Pozo*, 712 P.2d 1044, 1046 (Colo.App.1985)(noting that labeling a consequence as collateral "does not diminish its significance"), *rev'd on other grounds*, 746 P.2d 523 (Colo.1987), some consequences have been held to be collateral so the defendant need not be advised of them prior to pleading guilty. These include the loss of public or private employment, the effect on voting rights, a possible driver's license suspension and possible dishonorable discharge from the military. *State v. Heitzman*, 209 N.J.Super. 617, 508 A.2d 1161, 1164 (1986), *aff'd*, 107 N.J. 603, 527 A.2d 439 (1987). Also included in this list is the loss of the right to travel abroad and the loss of the right to possess firearms. *People v. Ford*, 86 N.Y.2d 397, 403, 633 N.Y.S.2d 270, 272–73, 657 N.E.2d 265, 267–68 (N.Y.1995).

The majority mentions deportation, possible enhancement of punishment, institution of civil commitment proceedings, loss of good time and possible consecutive sentences as

additional collateral consequences. *Ante,* at 536. And, I do not disagree that the situations listed in *Heitzman, Ford* and the majority opinion present collateral consequences of which a defendant need not be informed in order for his plea to be voluntary. Indeed, most of the aforementioned consequences are civil consequences only remotely related to the criminal case, and many of them are both indefinite and unforeseeable.

However, the instant case involves consequences quite different from those mentioned above. First, here we are faced with a pending criminal case, not some civil repercussion such as the loss of voting rights. Secondly, the criminal case was pending in the same county as the instant charges, and the same lawyer represented applicant on both the instant pleas and the pending criminal case. Undoubtedly, counsel was aware that applicant had a capital murder conviction and death sentence pending on direct appeal, and that applicant's pleas in the instant cases presented a risk if the capital case was reversed. Further, the fact that the pending case was a capital offense increases its significance in terms of the severity of any consequences these pleas may have. Moreover, there was a good possibility the capital case would be reversed on appeal.[1] Thus, there was also a good likelihood that applicant's pleas would later be used against him at the retrial of the capital case.

Because the consequences in the instant case are so vastly different from those mentioned in *Heitzman* and *Ford,* the majority errs in relying on those cases to decide the instant issue. Considering the instant consequences on their own, it is clear they were consequences of which counsel was aware and they were not indirect, insignificant or unforeseeable. Therefore, they were not collateral. The majority errs to hold otherwise.

### III. Ineffective Assistance of Counsel

Even if these consequences were collateral, counsel still had the duty to advise applicant

of them. Noteworthy in many of the cases cited in both the majority opinion and here are that they involve claims regarding *the trial court*'s failure to advise the defendant of the consequences of his plea. *United States v. Lambros,* 544 F.2d 962, 966 (8th Cir.1976); *Hutchison v. United States,* 450 F.2d 930, 931 (10th Cir.1971); *United States v. Vermeulen,* 436 F.2d 72, 75 (2nd Cir.1970); *Paschke,* 909 P.2d at 1331; *Dugan,* 534 N.W.2d at 900; *Smith,* 540 A.2d at 685. Several of the cases also involve a claim regarding counsel's failure to advise, but the courts in those cases conduct no separate analysis between the duties of counsel and the duties of the trial court. *Meaton v. United States,* 328 F.2d 379 (5th Cir.1964); *United States v. Cariola,* 323 F.2d 180, 185–86 (3rd Cir.1963); *Michel v. United States,* 507 F.2d 461, 465 (2nd Cir.1974); *Heitzman,* 508 A.2d at 1164.

However, several courts have discussed counsel's duties separately from the trial court's duties, and the majority of those courts have limited the *Cuthrell* standard to trial courts and have used the standards enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), to evaluate a claim that *counsel* erred in failing to advise the defendant of the consequences of his plea. *Saadiq,* 387 N.W.2d at 325; *Torrey,* 842 F.2d at 236; *Ford,* 633 N.Y.S.2d at 272, 657 N.E.2d at 267; *see also, Pozo,* 712 P.2d at 1046.

In *People v. Garcia,* 799 P.2d 413, 415 (Colo.App.1990), *aff'd,* 815 P.2d 937 (Colo. 1991), the Court noted that, although a trial court's duty is limited to advising the defendant of the direct consequences of his plea, "a challenge to a guilty plea based upon ... ineffective assistance of counsel involves examination of quite different considerations." The *Garcia* court held: "Although a defendant need not be advised of all collateral consequences of a guilty plea, if counsel has

---

1. In the trial, the prosecutor posed a hypothetical question to a number of veniremen during the early portions of the voir dire which was clearly improper under *Lane v. State,* 743 S.W.2d 617 (Tex.Cr.App.1987), and *Gardner v. State,* 730 S.W.2d 675 (Tex.Cr.App.1987). Applicant preserved the error, and this Court's reversal followed. *Morrow v. State,* 753 S.W.2d 372 (Tex.Cr. App.1988).

reason to know that particular collateral consequences are a concern to a defendant, but fails to conduct appropriate research, then failure to advise the defendant properly of those consequences may constitute ineffective assistance of counsel if the failure resulted in prejudice." *Id.*, 799 P.2d at 415.

An Illinois court agrees. That court has held that it is a lawyer's duty to advise his client of the consequences of his guilty plea. In determining which consequences, the court concluded it was not necessary that it be a "certitude for it to be one defense counsel should discuss with the defendant before a guilty plea. Rather, it is only necessary that the consequence *may be material* to the client's interests. A consequence is material if, under all of the circumstances, including both the severity and the likelihood of the particular consequence, it is one that may affect a client's decision to plead guilty." *People v. Miranda*, 184 Ill.App.3d 718, 133 Ill.Dec. 142, 147, 540 N.E.2d 1008, 1013 (Ill. App. 2 Dist.1989) (emphasis added).

Although the facts of the instant case are not common, my research has uncovered two cases involving very similar factual situations. Both cases are from Tennessee. *See, Teague v. State*, 772 S.W.2d 932 (Tenn.Crim. App.1988); *Adkins v. State*, 911 S.W.2d at 334. In *Teague*, the defendant was faced with a guilty plea while his conviction and death sentence in another case was pending on appeal. Counsel testified that he felt very good about the possibility that the death sentence would be reversed on appeal. The defendant asked counsel what effect, if any, his guilty plea would have if his death sentence were reversed, and counsel responded that it would have "absolutely no effect," and the defendant pled guilty. The death sentence was subsequently reversed and the new conviction was used by the State at the punishment phase of the capital case. Counsel testified that the advice he had given his client was "the worst advice I ever gave anybody."

Six years later, the same court was faced with a similar fact situation in *Adkins*. The defendant's death sentence was on appeal, and his lawyer failed to read the death penalty statute or advise the defendant of the effect that a guilty plea could have if the death sentence was reversed. Counsel testified he knew the death sentence was on appeal, and admitted he did not review the death penalty statute or advise the defendant of the possible consequences of a plea of guilty on the other case. However, counsel also testified he would have advised the defendant to do exactly the same thing even if he had known of the potential consequences.

In *Teague*, the court granted relief, while in *Adkins*, the court denied relief. Significantly, in *Teague*, the court analyzed the ineffective assistance of counsel claim, relying on *Hill*, while the *Adkins* Court abandoned the *Hill* standard and relied instead on *Cuthrell*. As explained previously, *Cuthrell* pertains to claims regarding *the trial court's* failure to advise, not counsel's.

The reasoning of the line of cases relying on the *Strickland* and *Hill* standard is both sound and persuasive. Therefore, I would hold that when a defendant raises a claim of ineffective assistance of counsel for failure to advise of the consequences of a plea the correct standard is that enunciated in *Strickland* and *Hill*, not *Cuthrell*; the defendant must show counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. This standard applies to challenges to guilty pleas; to prevail, applicant must show there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59, 106 S.Ct. at 370. Factors to be considered in determining whether counsel was effective include: (1) the amount of time spent in preparation of the defense; (2) whether advice was given which would promote an understanding of the law in relation to the facts; (3) whether the advice was reasonably competent; (4) whether the advice permits an informed and conscious choice; and, (5) whether the lawyer attempted to ascertain if the plea was voluntary and knowing. *Ex parte Morse*, 591 S.W.2d 904, 905 (Tex.Cr.App.1980).

### IV. Application and Conclusion

Applying the *Hill* standard to the instant case, it is clear counsel's performance was

deficient, and, but for counsel's deficient performance, applicant would not have pled guilty. As in *People v. Garcia*, 799 P.2d 413, counsel had reason to know that the impact of these guilty pleas on the capital case was a concern to applicant. Further, as in *People v. Miranda*, 184 Ill.App.3d 718, 133 Ill.Dec. 142, 540 N.E.2d 1008, this was a consequence which was material: the severity of the consequence was great because of the capital case pending on appeal and the likelihood that the pleas would be used against applicant at the retrial of the capital case was strong. Finally, under the factors of *Ex parte Morse*, 591 S.W.2d at 905, counsel's advice to applicant did not permit an informed and conscious choice. Therefore, counsel erred in failing to advise applicant the pleas could be used against him at the retrial of the capital murder case. Accordingly, applicant's pleas were involuntary as a result of counsel's ineffective representation.

For these reasons, I respectfully dissent to the majority's decision to deny relief.

OVERSTREET, J., joins this opinion.