Cause No









Cause No. 14-04-00760-CR Dismissed,
Judgment in Cause No. 14-04-00838-CR Affirmed,
and Memorandum Opinion filed April 28, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00760-CR

 

KATHRYN
BUFFINGTON-BENNETT, Appellant

 

V.

 

THE
STATE OF TEXAS, Appellee

 

________________________________________________________________

 

On Appeal from
the 209th District Court

Harris County, Texas

Trial Court Cause No. 872168

________________________________________________________________

 

NO.
14-04-00838-CR

 

EX PARTE
KATHRYN BUFFINGTON-BENNETT

________________________________________________________________

 

On Appeal from
the 209th District Court

Harris County, Texas

Trial Court Cause No.
996426

________________________________________________________________

 

 

M E M O R
A N D U M   O P I N I O N








In these two consolidated appeals, appellant,
Kathryn Buffington-Bennett, (1) challenges the validity of her guilty plea in
response to the March 2001 indictment for obtaining drugs by a forged
prescription; (2) appeals the trial court=s denial
of her application for a writ of habeas corpus; and (3) appeals the trial court=s
exclusion of hearsay testimony during the writ hearing.

We dismiss appellant=s direct
appeal of the trial court=s
adjudication of her guilt for lack of jurisdiction, and we affirm the trial
court=s denial
of appellant=s application for a writ of
habeas corpus.

I.  Factual and Procedural Background

On March 20, 2001, appellant attempted to pick up
prescriptions for the medications Vicodin and Soma at a Walgreens pharmacy in
West Houston.  The prescriptions, which
were in the name of Jason Goodman, were called in earlier that morning.  Because the prescriptions were filled a few
days before, the pharmacist thought it was too soon to refill them.  The pharmacist called the doctor=s office
and discovered the prescriptions were fraudulent.  The pharmacist notified the police, and
appellant was arrested.

Appellant was charged by indictment with obtaining
drugs by a forged prescription, and she entered a Aguilty@ plea
pursuant to a plea agreement with the State. 
The trial court signed an order deferring adjudication of guilt and
placing appellant on community supervision for three years.








In December 2003, the State sought to adjudicate
appellant=s guilt.  In a first amended motion, the State asserted
appellant violated the terms of her community supervision by driving while
intoxicated on multiple occasions, failing to perform community service at the
court-ordered rate, failing to report to her community-supervision officer as
ordered, failing multiple drug tests, and failing to attend prison for a day as
directed.  In February 2004, appellant
entered a plea of true to the reasons to revoke.  Appellant then filed an application for
habeas corpus relief challenging the validity of her plea of guilty in the
original cause.  At the hearing, the
trial court found the State=s
allegations true, found appellant guilty, and assessed punishment at three
years=
confinement in the Texas Department of Criminal Justice, Institutional
Division, and a $400 fine.  The trial
court also denied appellant=s
application for writ of habeas corpus.

II.  Analysis

A.        Does this court have jurisdiction over appellant=s direct
appeal?

As a preliminary matter, we must determine whether
this court has jurisdiction to consider appellant=s first
challenge, via direct appeal, to the voluntariness of her guilty plea.  A defendant placed on deferred-adjudication
community supervision may raise issues relating to the original plea proceeding
only in appeals taken when deferred-adjudication community supervision is first
imposed.  Manuel v. State, 994
S.W.2d 658, 661B62 (Tex.
Crim. App. 1999).  This includes
complaints about the voluntariness of the prior guilty plea and complaints of
ineffective assistance of counsel.  Guillory
v. State, 99 S.W.3d 735, 738 (Tex. App.CHouston
[1st Dist.] 2003, pet. ref=d); see
Jordan v. State, 54 S.W.3d 783, 785 (Tex. Crim. App. 2001).  In this case, if appellant desired to appeal
the order placing her on deferred adjudication, she should have done so when
the order was imposed.  At this point, we
are precluded from hearing the merits of appellant=s
challenge to the voluntariness of her plea by direct appeal.  Therefore, we dismiss appellant=s direct
appeal for want of jurisdiction.

B.        Did the trial court err by excluding hearsay testimony during
the writ hearing?








In her second and third issues, appellant contends
the trial court erred by excluding the hearsay testimony of Michelle Fontenot
and Randall Kasper during the writ hearing.[1]  Appellant argues that this testimony was
admissible under the excited-utterance hearsay exception in Texas Rule of
Evidence 803(2).  Tex. R. Evid. 803(2). 
Appellant asserts that exclusion of this testimony prevented the trial
court from fully evaluating her ineffective-assistance-of-counsel claim, which
is based on her trial counsel=s alleged
conflict of interest.

Both Fontenot and Kasper were friends of Shaun
Bennett, appellant=s
husband, who is now deceased.  Kasper
testified about a conversation with Bennett in the spring of 2001, weeks after
appellant=s arrest.  He described Bennett=s
demeanor at the time of their conversation as emotional, distraught, and
depressed.  Kasper said that Bennett was
upset about appellant=s
arrest.  On a bill of exception, Kasper
testified that Bennett said he sent appellant to pick up the prescription for
him and that appellant was arrested for a prescription that he wrote.  Bennett also said that he is the one who
should have been arrested, not appellant.

Fontenot testified that on the day appellant was
arrested, Fontenot drove Bennett to the Walgreens store where appellant had
been arrested so that he could pick up appellant=s
car.  She described Bennett=s
demeanor as upset and testified that he was crying.  On a bill of exception, Fontenot stated that
Bennett said he was very upset because appellant had been arrested.  Bennett said that he should have been the one
arrested because appellant did not know the prescription was forged.

Whether an out-of-court statement is admissible
under an exception to the general hearsay exclusion rule is a matter within the
trial court=s discretion.  Zuliani v. State, 97 S.W.3d 589, 595
(Tex. Crim. App. 2003).  We are only to
determine whether the record supports the trial court=s
ruling.  Coffin v. State, 885
S.W.2d 140, 149 (Tex. Crim. App. 1994). 
We will reverse only when A>the trial
judge=s
decision was so clearly wrong as to lie outside that zone within which
reasonable persons might disagree.=@  Zuliani, 97 S.W.3d at 595 (quoting Cantu
v. State, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992)).

 








Hearsay is a statement, other than one made by the
declarant while testifying at trial, offered in evidence to prove the truth of
the matter asserted.  Tex. R. Evid. 801(d).  For hearsay to be admissible, it must fit
into an exception provided by statute or the Rules of Evidence.  Tex.
R. Evid. 802.  An excited
utterance under Rule 803(2) is one such exception. Tex. R. Evid. 803(2).

An excited utterance is Aa
statement relating to a startling event or condition made while the declarant
was under the stress of excitement caused by the event or condition.@  Tex.
R. Evid. 803(2).  For hearsay to
be admitted under this exception, the proponent must predicate the statement by
showing the following: (1) the statement was a product of a startling
occurrence that produced a state of nervous excitement in the declarant and
rendered the utterance spontaneous; (2) the state of excitement dominated the
declarant=s mind such that there was no
time or opportunity for him to contrive or misrepresent; and (3) the statement
related to the circumstances of the occurrence preceding it.  See Jackson v. State, 110 S.W.3d 626,
633 (Tex. App.CHouston [14th Dist.] 2003, pet.
ref=d).

When determining whether a hearsay statement is
admissible as an excited utterance, a reviewing court may consider the amount
of time that elapsed between the startling event and the statement.  Salazar v. State, 98 S.W.3d 141, 154
(Tex. Crim. App. 2001).  It is not
dispositive that the statement was separated by a period of time from the
startling event; it is only a factor to consider in determining if the
statement is admissible under the excited-utterance hearsay exception.  Zuliani, 97 S.W.3d at 596.  The critical factor to consider when
determining if a statement is an excited utterance is A>whether
the declarant was still dominated by the emotions, excitement, fear, or pain of
the event.=@  Id. 
(quoting McFarland v. State, 845 S.W.2d 824, 846 (Tex. Crim. App.
1992)).  A reviewing court must decide if
the statement was made A>under
such circumstance as would reasonably show that it resulted from impulse rather
than reason or reflection.=@  Zuliani, 97 S.W.3d at 596 (quoting Fowler
v. State, 379 S.W.2d 345, 347 (Tex. Crim. App. 1964)).








We conclude that the trial court did not err in
excluding the hearsay testimony of Kasper and Fontenot because appellant failed
to show that Bennett=s
statements fell within the excited-utterance hearsay exception.  Bennett=s
statements to Kasper were made weeks after appellant was arrested.  Because such a large amount of time passed
between Bennett=s
learning of appellant=s arrest
and Bennett=s statements to Kasper, we
conclude that the trial court did not err in implicitly finding that these
statements resulted from reason or reflection and were made while Bennett was
no longer dominated by the emotions or excitement of learning about appellant=s arrest.

Bennett=s
statements to Fontenot, however, were made the same day as appellant=s
arrest.  These statements might well have
been admissible as excited utterances,
but the record before us lacks a sufficient predicate and
so we cannot make that determination.  An
unknown length of time elapsed between Bennett=s
learning about appellant=s arrest
and his statements to Fontenot. 
Appellant did not show that Bennett=s mind
was still dominated from the excitement or emotion of learning that appellant
had been arrested so that he had no time or opportunity to concoct a version of
events exculpating his wife.

We find that the trial court did not abuse its
discretion by excluding the hearsay statements of Kasper and Fontenot.  Accordingly, we overrule appellant=s second
and third issues.

C.        Was appellant=s plea of
guilty involuntary?








In her
first issue, appellant alleges that she received ineffective assistance of
counsel at the original plea hearing, and therefore, her plea of guilty was
involuntary.  Specifically, she claims
her trial counsel was ineffective because he was burdened by an alleged
conflict of interest that caused him to advance her husband=s
interests over her own.  Appellant
asserts that because her counsel=s loyalty
was impaired, he was unable to consider, recommend, or carry out appropriate
courses of action.  Appellant contends
that, if her trial counsel had not been burdened with the alleged conflict, she
would not have pleaded guilty to the indictment and would have insisted on
proceeding to trial and calling her husband as a witness to exculpate her.

Appellant
argues her plea was involuntary because her trial counsel=s alleged
conflict (1) prevented him from advising appellant to inculpate her husband in
order to get the charges against her dropped or reduced, and (2) caused trial
counsel not to interview Kasper and Fontenot, who could have inculpated her
husband.

We review
a trial court=s ruling on a habeas corpus
application for an abuse of discretion.  Ex
parte Alakayi, 102 S.W.3d 426, 430 (Tex. App.CHouston
[14th Dist.] 2003, pet. ref=d).  Applicants for a writ of habeas corpus have the burden of proving their allegations by a preponderance of
the evidence.  Id.  We decide whether a trial court abused its
discretion by determining whether the court acted without reference to any
guiding rules or principles, or in other words, whether the court acted
arbitrarily or unreasonably.  Lyles v.
State, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993).  A trial court abuses its discretion when its
decision lies outside of the zone of reasonable disagreement.  Montgomery v. State, 810 S.W.2d 372, 391
(Tex. Crim. App. 1990) (op. on reh=g).








Both the United States and Texas
Constitutions guarantee an accused the right to assistance of counsel.  U.S.
Const. amend. VI; Tex. Const. art.
I, ' 10; Tex. Code Crim. Proc. art. 1.051 (Vernon 2005).  This right necessarily includes the right to
reasonably effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668,
686, 104 S. Ct. 2052, 2063B64, 80 L. Ed. 2d 674 (1984); Ex parte Gonzales, 945
S.W.2d 830, 835 (Tex. Crim. App. 1997). 
This right extends to the plea bargaining process.  Kegler v. State, 16 S.W.3d 908, 911
(Tex. App.CHouston [14th Dist.] 2000, pet. ref=d). 
To prove that a plea was involuntary because of ineffective assistance
of counsel, appellant must show (1) counsel=s representation and advice fell
below an objective standard of reasonableness, and (2) this deficient
performance prejudiced the defense by causing her to give up her right to a
trial.  See Ex parte Morrow, 952
S.W.2d 530, 536 (Tex. Crim. App. 1997); see also Strickland, 466 U.S. at
688B92; 104 S. Ct. at 2064B67. 
Appellant must prove ineffective assistance of counsel by a
preponderance of the evidence.  See Ex
parte Morrow, 952 S.W.2d at 536.

Because appellant=s ineffective-assistance claim
involves an alleged conflict of interest, she urges us to analyze her claim
under the standard articulated in Cuyler v. Sullivan. 446 U.S. 335, 100
S. Ct. 1708, 64 L. Ed. 2d 333 (1980). 
Under Cuyler, a defendant demonstrates a violation of her right
to reasonably effective assistance of counsel based on a conflict of interest
if she can show that (1) her counsel was burdened by an actual conflict of
interest; and (2) the conflict had an adverse effect on specific instances of
counsel=s performance.  Id. at 348B50, 100 S. Ct. at 1718B19; Monreal v. State, 947
S.W.2d 559, 564 (Tex. Crim. App. 1997). 
Under Strickland, prejudice is not presumed.  See Strickland, 466 U.S. at 692B93, 104 S. Ct. at 2067.  The defendant must show that counsel made an
error that was Aso serious as to deprive the defendant of a fair trial, a
trial whose result is reliable.@ Id. at 687, 104 S. Ct. at 2064.  Under Cuyler, however, a defendant
need only show that her counsel=s performance was Aadversely affected@ by a conflict of interest.  See Cuyler, 446 U.S. at 349B50, 100 S. Ct. at 1718B19.








In order to take advantage of the Cuyler
test, a defendant is required to prove that her counsel was burdened by an
actual conflict of interest.  Cuyler,
446 U.S. at 348B50, 100 S. Ct. at 1718B19. 
Until a defendant establishes that her counsel actively represented
conflicting interests, she has not established the Constitutional predicate for
her ineffective-assistance claim under Cuyler.  Id. at 350, 100 S. Ct. at 1719.  An actual conflict arises when A>one defendant stands to gain
significantly by counsel adducing probative evidence or advancing plausible
arguments that are damaging to the cause of a co-defendant whom counsel is also
representing.=@ 
Foster v. State, 693 S.W.2d 412, 413 (Tex. Crim. App. 1985)
(quoting Foxworth v. Wainwright, 516 F.2d 1072, 1076 (5th Cir.
1975)).  An actual conflict also arises
when counsel is required to make a choice between advancing his client=s interest in a fair trial or
advancing other interests to the detriment of his client=s interests.  Monreal, 947 S.W.2d at 564.  The conflict must be more than merely
speculative; the defendant must prove that an actual conflict of interest
existed.  See Cuyler, 446 U.S. at
350, 100 S. Ct. at 1719.

Appellant
claims that there was an actual conflict of interest in this case because of
the relationship between her trial counsel, Jim Rose, and her late husband,
Bennett.  Bennett=s mother
lived with and was engaged to Rose in the 1970s.  Rose considered Bennett to be his surrogate
son.  Appellant alleges that the close
relationship between Bennett and Rose caused Rose to advance Bennett=s interests
over hers.

Cuyler does not
apply to this case because appellant has not established an actual conflict of
interest.  Appellant and Bennett were not
co-defendants; Rose was representing only appellant.  See Foster, 693 S.W.2d at 413.  In
addition, appellant does not point to an instance during the course of Rose=s
representation of her in which an actual conflict of interest was evident, nor
does our review of the trial record indicate that Rose was ever required to choose to
advance Bennett=s interests to the detriment of appellant=s interests.  See Monreal, 947 S.W.2d at 564.  On both
direct and cross-examination during the writ hearing, Rose testified that he
did not change his representation of appellant because of his relationship with
Bennett.  Because appellant is unable to
establish an actual conflict of interest, we evaluate appellant=s
ineffective-assistance-of-counsel claim under the Strickland test. See Cuyler, 446 U.S. at 350,
100 S. Ct. at 1719.

In assessing appellant=s claims under the Strickland
test, we apply a strong presumption that trial counsel was competent.  Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999).  We presume counsel=s actions and decisions were
reasonably professional and were motivated by sound trial strategy.  See Jackson v. State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994).  Appellant has
the burden to rebut this presumption by presenting evidence illustrating why
trial counsel did what he did.  See
id.  Trial counsel=s performance falls below an objective
standard of reasonableness as a matter of law when no reasonable trial strategy
would justify trial counsel=s actions, regardless of whether the record adequately
reflects trial counsel=s subjective reasons for acting as he did.  Andrews v. State, __ S.W.3d __, 2005
WL 658979, at *2 (Tex. Crim. App. Mar. 23, 2005).








We
conclude that the trial court did not abuse its discretion in denying appellant=s
application for writ of habeas corpus.  See
Ex parte Alakayi, 102 S.W.3d at 430. Presuming without deciding that
trial counsel=s representation fell below an objective standard of reasonableness, appellant cannot establish that
counsel=s performance prejudiced appellant by
causing her to give up her right to a trial. 
See Ex parte Morrow, 952 S.W.2d at 536.  From the face of the record, we
cannot find any indication that appellant would have opted not to plead guilty
had her trial counsel discovered and interviewed Kasper and Fontenot.  There is also no indication that appellant
would not have pleaded guilty had Rose encouraged appellant to inculpate her
husband.  There is no testimony from
appellant stating that she would not have pleaded guilty had Rose discovered
and interviewed the two witnesses or encouraged appellant to implicate her
husband.  At the writ hearing, Rose
testified that he advised appellant that if she implicated Bennett, the charges
against her might be reduced or dropped, but in that event, Bennett likely
would be charged and face two to ten years in prison.  Rose stated that appellant did not want to
pursue that course of action.  Because
appellant refused to exculpate herself by implicating her husband, the trial
court did not abuse its discretion in impliedly ruling appellant still would
have pleaded guilty had her trial counsel discovered and interviewed the two
witnesses or encouraged appellant to implicate her husband.  Accordingly, we overrule appellant=s first
issue.

We
dismiss appellant=s direct
appeal for lack of jurisdiction, and we affirm the trial court=s denial
of appellant=s application for a writ of
habeas corpus.

 

/s/        Kem Thompson Frost

Justice

 

Judgment
rendered and Memorandum Opinion filed April 28, 2005.

Panel consists
of Chief Justice Hedges and Justices Fowler and Frost.

Do Not
Publish C Tex. R. App. P. 47.2(b).

 











[1]  The State
argues that the record does not show that the trial court excluded the hearsay
testimony of Fontenot and Kasper from the trial court=s consideration. 
Upon reviewing the record, however, we conclude that the trial court did
exclude the testimony in question.