

# NUMBER 13-05-00114-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**ARMANDO QUINTANA VILLANUEVA,**                **Appellant,**

**v.**

**THE STATE OF TEXAS,**                **Appellee.**

---

### On appeal from the 398th District Court
### of Hidalgo County, Texas.

---

## MEMORANDUM OPINION ON REMAND

### Before Justices Rodriguez, Garza, and Benavides
### Memorandum Opinion on Remand by Justice Garza

This is an appeal from the trial court's denial of a post-conviction writ of habeas corpus brought pursuant to article 11.072 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 (Vernon 2005). On remand from the Texas Court of Criminal Appeals, we address appellant Armando Quintana Villanueva's contentions that the trial court erred in denying his article 11.072 application for writ of habeas corpus as frivolous. *See id.* We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 21, 2000, Villanueva was indicted for the felony offense of assault of a public servant, which allegedly occurred on February 16, 2000.[1]  *See* TEX. PENAL CODE ANN. § 22.01(b)(1) (Vernon 2003).  On September 6, 2000, pursuant to a plea agreement with the State, Villanueva entered a plea of guilty to the lesser-included misdemeanor offense of assault.[2]  *See id.* § 22.01(a), (b).  The trial court accepted Villanueva's plea, found him guilty, and assessed his punishment at one year imprisonment and a $1,000 fine.  However, the trial court suspended Villanueva's sentence and placed him on two years' community supervision.

On October 26, 2004, approximately two years after his community-supervision term ended, Villanueva filed his application for a writ of habeas corpus under article 11.072 of the code of criminal procedure, requesting that his conviction and sentence be set aside because his guilty plea was unknowing and involuntary and because he received ineffective assistance of counsel.  *See* TEX. CODE CRIM. PROC. ANN. art. 11.072.

The trial court concluded, without a hearing, that Villanueva's application was

---

[1] As indicated in the police report compiled by Investigator Samuel Herrera, Jr., Villanueva was arrested for driving while intoxicated and without a valid license.  Upon arriving at the police station, Villanueva allegedly threatened to assault the arresting officer and subsequently kicked the arresting officer in the leg with his cowboy boots.  Therefore, Villanueva was charged with assault of a public servant, a third degree felony.  *See* TEX. PENAL CODE ANN. § 22.01(b)(1) (Vernon 2003).

[2] Villanueva's plea agreement incorrectly stated that the punishment range for assault of a public servant, a third degree felony, was "2 to 20 years"; the correct punishment range for this offense was two to ten years.  *See id.* § 12.34 (Vernon 2003); *see also Aguirre-Mata v. State*, 992 S.W.2d 495, 498 (Tex. Crim. App. 1999) (stating that the trial court's failure to admonish a defendant of the range of punishment is not "automatic reversible error, without regard to harm"); *Ex parte Smith*, 678 S.W.2d 78, 79 (Tex. Crim. App. 1984) (holding that when an admonishment is given, albeit an erroneous one, substantial compliance will be deemed to have occurred, and the burden shifts to the defendant to show that he entered his plea without understanding the consequences of such plea and thus was harmed); *Pena v. State*, 132 S.W.3d 663, 666 (Tex. App.–Corpus Christi 2004, no pet.); *Smith v. State*, 857 S.W.2d 71, 74 (Tex. App.–Dallas 1994, pet. ref'd) ("Substantial compliance exists when the record shows that the trial judge admonished the accused either orally or in writing, even if the admonishments are incomplete or incorrect.").  In any event, Villanueva agreed to plead guilty and did not take issue with the admonishment until two years after he completed his community supervision.

frivolous and entered an order denying relief on December 27, 2004. On January 12, 2005, Villanueva requested, in writing, that the trial court issue findings of fact and conclusions of law concerning the allegations contained in his application for writ of habeas corpus. Villanueva subsequently filed his first notice of appeal.

On January 20, 2005, the trial court denied Villanueva's request for findings of fact and conclusions of law and issued a second order denying his application for writ of habeas corpus as frivolous.[3] Villanueva filed his second notice of appeal, and the trial court certified his right to appeal.

On appeal, Villanueva challenged the trial court's denial of his application for writ of habeas corpus. *See Villanueva v. State*, No. 13-05-00114-CR, 2006 Tex. App. LEXIS 7247, at *1 (Tex. App.–Corpus Christi Aug. 17, 2006), *rev'd sub nom. Ex parte Villanueva*, 252 S.W.3d 391 (Tex. Crim. App. 2008). We dismissed Villanueva's appeal for lack of jurisdiction because the trial court did not appear to rule on the merits of his habeas application. *Villanueva*, 2006 Tex. App. LEXIS 7247, at *2.

The Texas Court of Criminal Appeals reversed this Court's decision, concluding that section 8 of article 11.072 of the code of criminal procedure controls in this matter.[4] *Ex parte Villanueva*, 252 S.W.3d at 397 (citing TEX. CODE CRIM. PROC. ANN. art. 11.072, § 8). The court of criminal appeals concluded that because the trial court denied Villanueva's application for writ of habeas corpus as frivolous, this Court has jurisdiction to consider Villanueva's claims. *Id.*

---

[3] The January 20, 2005 order superseded the December 27, 2004 order; therefore, we will examine the January 20, 2005 order.

[4] Article 11.072, section 8 of the code of criminal procedure provides that: "[i]f the application [for writ of habeas corpus] is denied in whole or part, the applicant may appeal under Article 44.02 and Rule 31, Texas Rules of Appellate Procedure. . . ." TEX. CODE CRIM. PROC. ANN. art. 11.072, § 8 (Vernon 2005).

## II. STANDARD OF REVIEW

In reviewing a trial court's decision on a writ of habeas corpus application, we review the facts in the light most favorable to the trial court's ruling and, absent an abuse of discretion, uphold the ruling. *See Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). We give "almost total deference to a trial court's determination of the historical facts," particularly when the findings are based on an evaluation of credibility and demeanor. *Peterson*, 117 S.W.3d at 819 (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We afford the same deference to the trial court's application of the law to the facts, if the resolution of the ultimate question turns on an evaluation of credibility and demeanor. *Id.* If the resolution of the ultimate question turns on an application of legal standards, we review the determination de novo. *Id.*

## III. ANALYSIS

By nineteen issues, which can be categorized as six, Villanueva argues that: (1) the trial court committed reversible error in denying his application for writ of habeas corpus as frivolous because his plea in the underlying case was involuntary and unknowing of the consequences, including possible deportation; (2) he received ineffective assistance of counsel; (3) his due process rights were violated by the trial court's failure to admonish him of the punishment range associated with the misdemeanor to which he was pleading guilty; (4) the trial court erred in refusing to take judicial notice of cases involving the application of federal immigration law; (5) the trial court erred in not making findings of fact and conclusions of law; and (6) he is entitled to a writ of habeas corpus because his conviction constitutes an illegal restraint on his liberty and because "he has no chance to legally return after deportation though he has a U.S. citizen wife pregnant with his child."

4

## A. Applicable Law

In order to obtain a writ of habeas corpus, an applicant must file a petition asserting the following:

> 1. That the person for whose benefit the application is made is illegally restrained in his liberty, and by whom, naming both parties, if their names are known, or if unknown, designating and describing them;
>
> 2. When the party is confined or restrained by virtue of any writ, order or process, or under color of either, a copy shall be annexed to the petition, or it shall be stated that a copy cannot be obtained;
>
> 3. When the confinement or restraint is not by virtue of any writ, order or process, the petition may state only that the party is illegally confined or restrained in his liberty;
>
> 4. There must be a prayer in the petition for the writ of habeas corpus; and
>
> 5. Oath must be made that the allegations of the petition are true, according to the belief of the petitioner.

TEX. CODE CRIM. PROC. ANN. art. 11.14 (Vernon 2005). However, because Villanueva was placed on community supervision, he may only challenge his punishment by writ of habeas corpus on constitutional grounds. *See id.* art. 11.072, § 3(c). Article 11.072 provides that:

> If the court determines from the face of an application or documents attached to the application that the applicant is manifestly entitled to no relief, the court shall enter a written order denying the application as frivolous. In any other case, the court shall enter a written order including findings of fact and conclusions of law. . . .

*Id.* art. 11.072, § 7(a).

## B. Discussion

### 1. Villanueva's Guilty Plea, Ineffective Assistance of Counsel, and the Trial Court's Admonishments

Villanueva argues that his trial counsel, Jack Wolfe: (1) failed to consult an immigration law expert and failed to inform Villanueva of the adverse immigration consequences of his guilty plea; (2) did not translate the plea agreement and waiver of

5

rights "word-for-word" from English to Spanish; and (3) failed to negotiate a plea bargain for a sentence less than one year, since Villanueva was convicted of a class A misdemeanor. Because of the alleged mistakes of trial counsel, Villanueva contends that he was deprived of his constitutional right to counsel and that his plea was entered into involuntarily and unknowingly. *See* U.S. CONST. amends. VI, XIV.

If a guilty plea is entered upon the advice of counsel, that counsel must be competent and render effective assistance. *See Pena v. State*, 132 S.W.3d 663, 668 (Tex. App.–Corpus Christi 2004, no pet.). An accused is entitled to effective assistance of counsel during the plea bargaining process. *Ex parte Battle*, 817 S.W.2d 81, 83 (Tex. Crim. App. 1991). A defendant's plea of guilty is not voluntary or knowing when it is based upon the erroneous advice of counsel. *Id.* In the context of habeas corpus proceedings, when a defendant challenges the voluntariness of a plea, contending that his counsel was ineffective, the voluntariness of the plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and, if not, (2) whether there is reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *See Ex parte Moody*, 991 S.W.2d 856, 857-58 (Tex. Crim. App. 1999); *Pena*, 132 S.W.3d at 669; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). The adequacy of counsel's assistance must be gauged by the totality of the representation. *Pena*, 132 S.W.3d at 669 (citing *Gomez v. State*, 921 S.W.2d 329, 333 (Tex. App.–Corpus Christi 1996, no pet.)). There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 669; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The right to "reasonably effective assistance of counsel" does not guarantee errorless counsel or counsel whose

6

competency is judged by perfect hindsight. *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983). In the present case, Villanueva has the burden to show that his counsel's performance fell below a reasonable standard of competence and that there is a reasonable probability that, but for counsel's errors, he would have pleaded not guilty and insisted on going to trial. *Moody*, 991 S.W.2d at 858; *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997).

Article 11.072 of the code of criminal procedure, which governs Villanueva's habeas corpus application, provides that an application may not be filed if the applicant could obtain the requested relief by means of appeal. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 3(a). Although claims of ineffective assistance of counsel are appealable, *Thompson*, 9 S.W.3d at 813-14, a direct appeal is often an inappropriate forum in which to bring these claims. *See id.* at 814 n.5. However, out of an abundance of caution, we will address Villanueva's claims.

In support of his contentions, Villanueva executed an affidavit stating that:

> On or before September 6, 2000, no one told me that one year in jail and/or a $ 4,000 fine is the maximum punishment I could receive if found guilty of a class A misdemeanor crime of assault in CR-0466-00-I.
>
> . . . .
>
> On September 6, 2000, I knew that under my plea bargain with the [S]tate the judge was going to decide how long my jail sentence would be in CR-0466-00-I and if I got three years incarceration or a misdemeanor.
>
> . . . .
>
> Although no one translated them to me, my understanding of those papers entitled "Waiver of Rights" and "Plea Admonishments" would have been important to my decision to plead guilty since I was then already thinking on and before September 6, 2000, of getting my legal status "okayed" and approved by the U.S. immigration officials.

On October 25, 2004, attorney Joseph A. Connors III[5] asked my wife Sara Villanueva to translate word-for-word all on [sic] the four pages beginning with the bold captions: "Waiver of Rights" etc. and "Plea Admonishments." After my wife read those four pages to me today, I told attorney Connors in Spanish: "Before I signed those bold captioned forms, no one ever translated those words to me; but I knew that with those papers I was giving up my right for future court dates and I would accept what the court gave me. Before I pled [sic] guilty in CR-0466-00-I or signed those papers that said I am guilty, I should have been told what those pages said.

I was prejudiced by my trial defense counsel's failure to correctly explain to me that I was charged with and convicted of a Texas offense that federal immigration law has classified as an "aggravated felony." Had I known that information which defense counsel never told me, then I probably would not have plead [sic] guilty because my defense(s) to this criminal case needed to be determined by a jury, from whom I expected to receive a verdict of not guilty. Thus, there is a reasonable probability that but for counsel's error(s)[,] I would not have pleaded guilty.

In signing his guilty plea, Villanueva agreed that he freely and voluntarily pleaded guilty, and he admitted that he "committed each and every element of every offense alleged in the indictment or information and of any lesser included offense therein." In conjunction with his guilty plea, Villanueva signed a document entitled, "PLEA ADMONISHMENTS," which stated, among other things, that if he was not a United States citizen, a plea of guilty or nolo contendere "may result in deportation, exclusion from admission to the country, or denial of naturalization under federal law." Moreover, at the September 6, 2000 hearing, the following exchange took place:

THE COURT:　　　　　Very well. The Court finds the defendant is mentally competent to stand trial.

　　　　　Sir, I need to advise you if you are not a citizen of the United States and you plead nolo contendere or plead guilty, a plead [sic] guilty may result in you being deported, your exclusion from the United States, or you may be denied naturalization under federal law. Do you

---

[5] Joseph A. Connors III was appointed as Villanueva's counsel for appeal. His representation of Villanueva is not the subject of this appeal.

| | |
|---|---|
| | understand that? |
| THE DEFENDANT: | Yes. |
| . . . . | |
| MR. WOLFE: | I would like to also put on the record that I did explain to my client about the possibility of deportation and we went over that at length for about ten or 15 minutes and he understands that even though this is reduced to a misdemeanor there is still a possibility that he could be deported. |
| THE COURT: | You do understand that, sir? |
| THE DEFENDANT: | Yes. |

The trial court subsequently accepted Villanueva's guilty plea.

Besides the bald allegations contained in his affidavit, Villanueva has not pointed to anything in the record indicating that Wolfe failed to consult an immigration law expert or that he lacked knowledge of immigration law prior to consulting Villanueva regarding the plea agreement. In fact, Wolfe stated in open court that he and Villanueva discussed the plea agreement and the possibility of deportation at length. Without more, a defendant's claims that he was misinformed by counsel does not make a plea involuntary. *See Pena*, 132 S.W.3d at 669; *see also Tabora v. State*, 14 S.W.3d 332, 336 (Tex. App.–Houston [14th Dist.] 2000, no pet.). Wolfe's statements at the September 6, 2000 hearing and Villanueva's signing of the plea agreement and the plea admonishments indicate that he was informed of the implications of his guilty plea as it pertained to deportation.

In any event, the Texas Court of Criminal Appeals has held that a guilty plea is considered voluntary if the defendant entered the plea fully aware of the direct consequences. *State v. Jimenez,* 987 S.W.2d 886, 888 (Tex. Crim. App. 1999) (en banc). However, a guilty plea will not be rendered involuntary by lack of knowledge as to collateral

consequences. *Id.* "That a guilty plea may result in deportation is generally considered a collateral consequence." *Id.* at 889. Therefore, Villanueva's contention that his plea was unknowing and involuntary because of his ignorance as to the potential deportation consequences must fail.

Villanueva further argues that his plea was unknowing and involuntary and that he was not provided effective assistance of counsel because Wolfe failed to translate the plea agreement "word-for-word" from English to Spanish. Villanueva, however, has not provided any evidence besides his own self-serving affidavit demonstrating that Wolfe failed to translate the plea agreement "word-for-word" from English to Spanish. In fact, the arguments presented at the September 6, 2000 hearing indicate otherwise:

| MR. WOLFE: | Your Honor, Jack Wolfe for the defendant. I just consulted with my client and explained to him the changes that were taking place and he understands and he wishes to proceed. |
|---|---|
| . . . . | |
| THE COURT: | Have you reviewed with your attorney some documents entitled Stipulation of Evidence, Waiver of Rights and Plea Admonishments? |
| THE DEFENDANT: | Yes. |
| THE COURT: | You're representing to the Court that you understand those documents? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Did you sign each of those documents with your true and correct signature? |
| THE DEFENDANT: | Yes. |
| THE COURT: | And were these documents explained to you in Spanish? |
| THE DEFENDANT: | Yes. |

10

. . . .

| | |
|---|---|
| THE COURT: | Are you satisfied with his [Wolfe's] services and his advice? |
| THE DEFENDANT: | Yes. |

At no point during the hearing did Villanueva state that Wolfe failed to translate parts of the plea agreement and waiver of rights. Furthermore, on appeal, Villanueva has not indicated which part of the documents was not translated to him. *See Pena*, 132 S.W.3d at 669 ("In cases holding a guilty plea to be involuntary, the record contains confirmation of the misinformation by counsel, or documents augmenting the defendant's testimony that reveal the misinformation and shows its conveyance to the defendant."); *see also Tabora*, 14 S.W.3d at 336.

Villanueva also asserts that Wolfe failed to negotiate a plea bargain for a sentence less than one year. However, he has not directed us to anything in the record demonstrating that this was the case. *See Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002) (holding that assertions of ineffective assistance of counsel must be firmly founded in the record). Moreover, the State recommended and Villanueva actually received two years' community supervision as punishment; therefore, we cannot say that the record supports a finding that Wolfe failed to negotiate for a sentence of less than one year's incarceration. *See id.* Based on the foregoing, we conclude that Villanueva failed to meet his burden in demonstrating that Wolfe's representation fell below a reasonable standard of competence. *See Moody*, 991 S.W.2d at 858; *Morrow*, 952 S.W.2d at 536.

In addition, Villanueva contends that his plea was unknowing and involuntary because no one informed him "that one year in jail and/or a $4,000 fine is the maximum punishment" he "could receive if found guilty of a class A misdemeanor crime of assault"

11

as required by article 26.13 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13 (Vernon Supp. 2008).

The trial court is not required to advise a defendant of every aspect of law having a bearing on his case. *See Ruffin v. State*, 3 S.W.3d 140, 145 (Tex. App.–Houston [14th Dist.] 1999, pet. ref'd). Generally, the trial court need only admonish a defendant as to the direct consequences of a plea, which are those listed in article 26.13 of the code of criminal procedure. *See id.*; TEX. CODE CRIM. PROC. ANN. art. 26.13 (Vernon Supp. 2008). However, the requirements of article 26.13 are not applicable to misdemeanor offenses. *See Alvear v. State*, 25 S.W.3d 241, 246 (Tex. App.–San Antonio 2000, no pet.) (citing *Jimenez*, 987 S.W.2d at 889; *Shipley v. State*, 828 S.W.2d 475, 480 (Tex. App.–El Paso 1992, pet. ref'd); *Gibson v. State*, 747 S.W.2d 68, 69 (Tex. App.–Corpus Christi 1988, no pet.)).

Here, Villanueva was convicted of assault, a class A misdemeanor, even though he was originally indicted for assault of a public servant, a third-degree felony. Because Villanueva was convicted of a misdemeanor, the admonishment requirements contained in article 26.13 of the code of criminal procedure are not applicable. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13; *see also Alvear*, 25 S.W.3d at 246.

Villanueva also appears to posit an argument that the trial court's failure to admonish him of the punishment range for a class A misdemeanor constituted a violation of his "substantial rights" and, thus, was subject to harm analysis for non-constitutional error, as provided by rule 44.2(b) of the rules of appellate procedure. *See* TEX. R. APP. P. 44.2(b). However, Villanueva has not demonstrated how the lack of admonishment as to the punishment range associated with the misdemeanor constituted harmful error, nor has Villanueva cited to any authority stating that the trial court was required to admonish him

about the punishment ranges of all lesser-included offenses.[6]  *See* TEX. R. APP. P. 44.2(b); *see also* TEX. R. APP. P. 38.1(h); *Beavers v. State*, No. 2-05-448-CR, 2006 Tex. App. LEXIS 9791, at **34-37 (Tex. App.–Fort Worth Nov. 9, 2006, pet. ref'd) (holding that the trial court's failure to admonish the defendant of the correct punishment range and of sex offender registration did not constitute harmful error).

Based on the foregoing, we conclude that Villanueva entered into the plea agreement knowingly and voluntarily.  We further conclude that the trial court was not obligated to admonish Villanueva of the punishment range associated with the class A misdemeanor, and even if it was, Villanueva has not produced evidence demonstrating how his lack of knowledge of the misdemeanor punishment range constituted harmful error.  Accordingly, we overrule Villanueva's first three issues on appeal.

## 2.  Judicial Notice of Federal Immigration Law

In his fourth issue, Villanueva argues that the trial court erred in "not reading and taking judicial notice of the cited U.S. immigration cases, laws therein, and secondary sources."  Specifically, Villanueva alleges that the trial court failed to consider the Immigration and Nationality Act, which classifies his crime as an "aggravated felony" because the possible term of imprisonment was at least one year.  *See* 8 U.S.C. § 1101(a)(43)(F);[7] 18 U.S.C. § 16.[8]  In addition, Villanueva urges this Court to take judicial

---

[6] It is noteworthy that Villanueva received a sentence that was *less than* he originally agreed to with the State.

[7] Title 8, section 1101 of the United States Code provides that an "aggravated felony" means, among other things, "a crime of violence (as defined in section 16 of title 18, United States Code, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). Immigrants convicted of an "aggravated felony" are subject to deportation if the conviction transpired after admission to the United States.  *See id.* § 1227(a)(2)(A)(iii).

[8] A "crime of violence" is defined as:

(a) an offense that has as an element the use, attempted use, or threatened use of physical

13

notice of the applicable federal immigration laws.

Rule 201 of the Texas Rules of Evidence provides that judicial notice may be taken sua sponte at any stage of the proceedings of any adjudicative fact which "is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." TEX. R. EVID. 201(b), (f). "A court shall take judicial notice if requested by a party and supplied with the necessary information." *Id.* at R. 201(d). A court shall, upon request by a party, take judicial notice of, among other things, public statutes. *Id.* at R. 202. "The court's determination shall be subject to review as a ruling on a question of law." *Id.*

Villanueva has not provided any evidence or citations to the record demonstrating that the trial court failed to consider federal immigration laws when it denied his habeas application. *See* TEX. R. APP. P. 38.1(h). In addition, rule 201 of the rules of evidence pertains to adjudicative facts, which "must be relevant to the ultimate matter in dispute, but not be the subject of any controversy themselves." *Kubosh v. State*, 241 S.W.3d 60, 64 (Tex. Crim. App. 2007) (citing *Watts v. State*, 99 S.W.3d 604, 610 (Tex. Crim. App. 2003)); *see* TEX. R. EVID. 201.

We conclude that the federal immigration statutes that Villanueva requests we judicially notice are not adjudicative facts; therefore, we deny his judicial notice request. We arrive at this conclusion because the provisions of the Immigration and Nationality Act

---

force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

of which Villanueva relies hinge on a conviction of a "crime of violence . . . for which the term of imprisonment [is] at least one year." *See* 8 U.S.C. § 1101(a)(43)(F). Here, Villanueva was convicted of a class A misdemeanor and received a one-year suspended sentence which resulted in a sentence of two years' community supervision with no imprisonment. Therefore, his conviction does not appear to be an aggravated felony within the context of the Immigration and Nationality Act. *See id.* Moreover, Villanueva has not adequately explained what effect federal immigration laws have on this matter considering the record demonstrates that: (1) he was admonished of the consequences of his guilty plea, including possible deportation; (2) he entered into the plea knowingly and voluntarily; (3) his pending deportation proceedings, as explained below, do not pertain to his conviction but rather his attempt to illegally enter the United States without permission; and (4) his liberty was not illegally restrained, therefore, precluding him from habeas relief. The federal immigration statutes which Villanueva references do not appear to be relevant to the ultimate matter in dispute. *See Kubosh*, 241 S.W.3d at 64. Accordingly, we overrule Villanueva's fourth issue on appeal.

### 3. The Trial Court's Failure to Issue Findings of Fact and Conclusions of Law

In his fifth issue, Villanueva contends that the trial court erred in refusing to issue findings of fact and conclusions of law. We disagree.

As previously mentioned, article 11.072 provides that:

> If the court determines from the face of an application or documents attached to the application that the applicant is manifestly entitled to no relief, the court shall enter a written order denying the application as frivolous. *In any other case, the court shall enter a written order including findings of fact and conclusions of law.* . . .

TEX. CODE CRIM. PROC. ANN. art. 11.072, § 7(a) (emphasis added). Because we have concluded that Villanueva received effective assistance of counsel and that his guilty plea

15

was knowing and voluntary, the trial court correctly concluded that Villanueva's habeas application was frivolous. *See Ex parte Rieck*, 144 S.W.3d 510, 521 n.101 (Tex. Crim. App. 2004) (applying section 14.003 of the civil practice and remedies code to article 11.07 habeas corpus proceedings) (citing TEX. CIV. PRAC. & REM. CODE. ANN. § 14.003 (Vernon 2002)).[9]  As a result, the trial court was not obligated to enter findings of fact and conclusions of law. *See id.*; *see also* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 7(a).  We overrule Villanueva's fifth issue on appeal.

### 4. Villanueva's Deportation

With respect to his deportation, in his sixth issue, Villanueva asserts that his conviction caused him to be deported and that his conviction prevents him from obtaining United States citizenship, therefore, constituting a restraint on his liberty and entitling him to a writ of habeas corpus.  In support of his contentions, Villanueva points to his affidavit where he noted:

> I spoke to McAllen attorney Kyle Brown, a federal immigration law expert, who told me with the conviction in CR-0466-00-I, I will be deported and have no chance to return legal [sic]; but if that conviction is set aside or its sentence diminished, then I have the possibility to successfully apply for legal status, which means I can legally stay in the U.S.  Today, I still want to stay in the U.S. since I have a U.S. citizen wife, who is pregnant with my baby.

We disagree with Villanueva's characterization of his deportation.

Attached to Villanueva's habeas corpus application were documents pertaining to removal proceedings against him.  In particular, the document entitled "Notice to Appear"

---

[9] Section 14.003 of the civil practice and remedies code provides that a claim is frivolous if:

(1) the claim's realistic chance of ultimate success is slight; (2) the claim has no arguable basis in law or in fact; (3) it is clear that the party cannot prove facts in support of the claim; or (4) the claim is substantially similar to a previous claim filed by the inmate because the claim arises from the same operative facts.

TEX. CIV. PRAC. & REM. CODE ANN. § 14.003(b) (Vernon 2002).

provided the following:

> The Service alleges that you [Villanueva]:
>
> 1)     You are not a citizen or national of the United States;
>
> 2)     You are a native of MEXICO and a citizen of MEXICO;
>
> 3)     You arrived in the United States at or near Hidalgo, Texas, on or about February 29, 2004;
>
> 4)     You were not then admitted or paroled after inspection by an Immigration Officer.
>
> On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provisions of law:
>
> 212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

None of the documents involving Villanueva's removal from the United States addressed his conviction for a class A misdemeanor. It is clear from the documentation provided that Villanueva was not deported because of his conviction but rather because he entered the United States illegally. Furthermore, outside of his contentions that his guilty plea was entered unknowingly and involuntarily, Villanueva has not demonstrated that his liberty has been illegally restrained. *See* TEX. CODE CRIM. PROC. ANN. art. 11.14. Villanueva merely asserts speculative arguments that his liberty may be illegally restrained in the future. As noted by the trial court in its January 20, 2005 order, such speculation does not constitute evidence of an illegal restraint. *See, e.g., In re Look*, No. 01-02-00959-CV, 2003 Tex. App. LEXIS 2056, at **3-4 (Tex. App.–Houston [1st Dist.] 2003, orig. proceeding) (mem. op.) (concluding that assertions that liberty will be restrained in the future are speculative and do not entitle a party to habeas relief). Therefore, Villanueva is not entitled to a writ of habeas corpus. *See* TEX. CODE CRIM. PROC. ANN. art. 11.14. We overrule Villanueva's

sixth issue on appeal.

## IV. Conclusion

Having overruled all of Villanueva's issues on appeal, we affirm the judgment of the trial court denying Villanueva's habeas application.

_____
DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Memorandum Opinion on Remand delivered
and filed this the 9th day of October, 2008.