Opinion issued October 30, 2008









Opinion issued October 30,
2008                                                                 

 

 

 



 

 

 

 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-07-00896-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



IN THE MATTER OF J.A.L.

 

 

 



On Appeal from the 306th District Court

Galveston County, Texas

Trial Court Cause No. 98JV0499

 

 



MEMORANDUM OPINION

          Pursuant to a plea agreement, the
trial court adjudicated J.A.L. as having engaged in delinquent conduct by
committing capital murder and robbery, and sentenced him to forty years’
confinement.  J.A.L. attacked the constitutionality of his conviction in an
application for habeas corpus relief, contending that his trial counsel
rendered constitutionally ineffective assistance by failing to request a
hearing on whether J.A.L. was mentally fit to proceed before J.A.L. agreed to the
plea.  The trial court denied relief.  We affirm.  

Background

In 1999,
J.A.L., then sixteen years of age, was arrested and charged with delinquent
conduct by committing capital murder, specifically, by robbing and repeatedly
stabbing a man to death.  Before proceeding with the adjudication, the county
court, sitting as a juvenile court, ordered that J.A.L. be evaluated by a
psychiatrist to determine whether he should be certified to stand trial as an
adult. 

          The psychiatrist who
examined J.A.L. determined that “he is a moderately retarded individual,” but
“does not show signs of mental illness.”  The psychiatrist further opined that
he 

seem[ed] to have an
elementary concept of what’s right and what’s wrong, in terms of
behavior. . . .  He is not so retarded that he is not slightly
educable and he could learn how to perform some simple jobs.

At the psychiatrist’s direction,
J.A.L. also underwent I.Q. testing, which showed that J.A.L. had an I.Q. of 57
and thus confirmed the psychiatrist’s clinical impression.  Based on this
evaluation, the psychiatrist concluded that she could “not possibly recommend
he be certified to stand trial as an adult.”  Both the court and J.A.L.’s
court-appointed counsel received copies of the psychiatrist’s report. 

Next, the State
petitioned the state family district court (the “trial court”) to find that
J.A.L. engaged in delinquent conduct by committing capital murder and robbery. 
A few days later, J.A.L. appeared with counsel before the trial court to
execute a plea agreement with the State.  J.A.L. signed a stipulation
confessing to the allegations of the petition.  He also wrote his initials next
to each of the admonishments given by the trial court, thereby confirming that
he understood the contents of each admonishment, including the rights he waived
and the nature and possible consequences of his adjudication hearing.  In
accord with these admonishments and the plea agreement, the trial court entered
judgment and sentenced J.A.L. to a forty-year term, with a possible transfer to
the institutional division or the pardons and paroles division of the Texas
Department of Criminal Justice.  The trial court’s disposition order further
declared that J.A.L. would become eligible to apply for parole after serving
ten years of the sentence. 

Nearly nine
years later, the same trial court that presided over J.A.L.’s juvenile
proceeding and entry of plea agreement presided over the evidentiary hearing
held on J.A.L.’s application for habeas relief.  The trial court heard
testimony from J.A.L., his trial counsel, the assistant district attorney who
brought the petition against J.A.L., and J.A.L.’s father, stepmother, and
grandmother.  Relying on the testimony, the evidence, and her personal
recollection, the trial judge denied the writ.  

Discussion

In his sole ground for appeal, J.A.L.
contends that the trial court erred in denying his application for habeas
corpus relief because the undisputed evidence shows that his trial counsel
failed to procure an adjudication of J.A.L.’s mental fitness before J.A.L.
entered into the plea agreement.  This failure, J.A.L. claims, constitutes
ineffective assistance of counsel in violation of his rights under the Sixth
Amendment of the United States Constitution and Article 1, Section 10, of the
Texas Constitution.  See U.S. Const. amend. VI; Tex. Const. art. 1, § 10.

Ineffective assistance of counsel

To prevail on
a claim of ineffective assistance of counsel, the habeas applicant must show
that (1) his counsel’s performance was deficient and (2) a reasonable
probability exists that the result of the proceeding would have been different.
 Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064
(1984). The first prong of Strickland requires the applicant to show
that counsel’s performance fell below an objective standard of reasonableness.  Thompson
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  Thus, the applicant
must prove objectively, by a preponderance of the evidence, that his counsel’s
representation fell below professional standards.  Mitchell v. State, 68
S.W.3d 640, 642 (Tex. Crim. App. 2002).  The second prong requires the applicant
to show a reasonable probability that, but for counsel’s unprofessional errors,
the result of the proceeding would have been different.  See Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; see
also Thompson, 9 S.W.3d at 812.  “A [reviewing] court [should] indulge a
strong presumption that counsel’s conduct falls within the wide range of
reasonable professional assistance; that is, the [applicant] must [also] overcome
the presumption that, under the circumstances, the challenged action ‘might be
considered sound trial strategy.’” Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.  “Any allegation of ineffectiveness must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged ineffectiveness.”
 Thompson, 9 S.W.3d at 813 (citing McFarland v. State, 928 S.W.2d
482, 500 (Tex. Crim. App. 1996)).  

In a habeas
challenge based on the voluntariness of a plea entered on the advice of
counsel, we specifically examine (1) whether counsel’s advice was within the
range of competence demanded of attorneys in juvenile cases and if not, (2)
whether there is a reasonable probability that, but for counsel’s errors, he
would not have pleaded guilty and would have insisted on proceeding to trial.  See
Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); Ex parte
Morrow, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997).

In reviewing
the trial court’s decision, we are mindful that the judge presiding over the
habeas hearing is in the best position to make credibility determinations.  We thus
defer to the trial court’s factual findings that are supported by the record.  See
Ex parte Brown, 205 S.W.3d 538, 544–46 (Tex. Crim. App. 2006); Ex parte
Wheeler, 203 S.W.3d 317 (Tex. Crim. App. 2006).  Further, if the same trial
judge presides over the trial court adjudication and the habeas proceeding, that
judge is entitled to take judicial notice of the relevant facts and
circumstances in the trial proceedings.  See Ex parte Turner, 612 S.W.2d
611, 612 (Tex. Crim. App. 1981).  

Mental
fitness to proceed  

J.A.L. contends that his trial
counsel’s failure to request a hearing to determine whether J.A.L. was mentally
fit to proceed amounts to ineffective assistance.  Under the Texas Family Code,


[a] child
alleged by petition or found to have engaged in delinquent conduct or conduct
indicating a need for supervision who as a result of mental illness or mental
retardation lacks capacity to understand the proceedings in juvenile court or
to assist in the child’s own defense is unfit to proceed and shall not be
subjected to discretionary transfer to criminal court, adjudication,
disposition, or modification of disposition as long as such incapacity endures.

Tex. Fam.
Code Ann. § 55.31(a)
(Vernon 2002).  The trial court may hold a separate hearing to allow the
defense to prove, by a preponderance of the evidence, that the child is unfit
to proceed.  Id. § 55.31(c).  If the child is not mentally fit to
proceed, the trial court must stay the proceeding until the child becomes fit
to proceed.  Id. § 55.31(d).  

This statutory standard differs from
those used in psychiatry and the mental health professions to determine whether
a person has a severe mental disability.   See ex parte Briseño, 135
S.W.3d 1, 8 n.28 (Tex. Crim. App. 2004).  In Briseño, the Court of
Criminal Appeals considered the difficulty in identifying the level and degree
of mental retardation at which the community would find that a person should be
exempted from the death penalty, following Atkins v. Virginia, 536 U.S. 304, 122 S. Ct. 2242 (2002).  135 S.W.3d at 6.  The court noted that the definition of mental
retardation itself has been in flux, and whether or the degree to which a
person is mentally retarded can change over time.  Id. at 8 n.29. 
Excerpting from learned treatises on the issue, the court further observed that

[s]ignificantly
subaverage intellectual functioning is defined as an IQ of about 70 or below .
. . .  Psychologists and other mental health professionals are flexible in
their assessment of mental retardation; thus, sometimes a person whose IQ has
tested above 70 may be diagnosed as mentally retarded while a person whose IQ
tests below 70 may not be mentally retarded.  Furthermore, IQ tests differ in
content and accuracy.

Id. at 7 n.24 (quoting Am.
Psychiatric Ass’n Diagnostic & Statistical Manual of Mental Disorders
39 (Text Rev., 4th ed. 2000), and Am.
Ass’n on Mental Deficiency, Classification in Mental Retardation 1, 23,
56–57 (Grossman ed. 1983)).  We therefore consider whether the evidence shows
that J.A.L.’s mental retardation rendered him unable to understand the
proceedings or assist in his own defense such that his trial counsel rendered
ineffective assistance by failing to request a hearing as to J.A.L.’s mental
fitness to understand the proceedings and assist in his defense before a
hearing on J.A.L.’s guilty plea.     

          The record contains
conflicting evidence on this issue.  J.A.L. testified that he either
misunderstood counsel’s explanation of the effects of his guilty plea or that
counsel misinformed J.A.L. concerning his options.  According to J.A.L., he did
not understand the consequences of his plea.  Specifically, J.A.L. testified,
he believed, incorrectly, (1) that he could have been subject to the death
penalty if he did not accept the plea offer, and (2) that he would be paroled
in five years, at age 21, if he did accept it.[1] 
In contrast, J.A.L.’s trial counsel testified that, while he suspected that
J.A.L. had some intellectual impairment, J.A.L.’s questions were forthright and
relevant to the matters they discussed.  Trial counsel recalled explaining the
plea bargain to J.A.L., reviewing it “so many times that he got it.”  Trial
counsel specifically denied ever telling J.A.L. that he could be subject to the
death penalty, and further told J.A.L. that his chances of receiving parole at
age 21 were “one in a million,” given the nature of the offense and his prior
criminal record.  After explaining J.A.L.’s options to him and answering his
questions, trial counsel continued, J.A.L. appeared to understand the options
presented, and at no time indicated that he did not.  The record also contains
lengthy letters handwritten in legible cursive by J.A.L. near the time of his
plea.  The letters, two addressed to his girlfriend and one to the trial judge,
contain complete sentences and express coherent thoughts.  The letters also
demonstrate that J.A.L. understood why he was in confinement and that he could
receive a life sentence.  J.A.L. testified at his habeas hearing that he had
help writing the letters, but the trial court was entitled to discount this
vague explanation for their relative lucidity.[2]  


          In reaching her decision,
the trial judge, noting trial counsel’s years of experience in handling
juvenile proceedings, recalled that, when she inadvertently misinformed J.A.L.
on a legal issue regarding J.A.L.’s determinate sentence at the plea hearing,
trial counsel corrected her, explaining the new change in the law for the court
and his client.  She noted that this specific incident was in keeping with her
personal experience and general opinion of trial counsel as a thorough and
capable attorney, and that, as a result, she did not find credible J.A.L.’s
allegation that trial counsel misinformed him that he was subject to the death
penalty.  In deference to the trial court’s credibility findings, and because
the trial court’s factual findings are supported by the record, we hold that
J.A.L. has not met his burden to establish that his counsel was ineffective. 
The trial thus court did not abuse its discretion in denying J.A.L.’s
application for habeas corpus relief.  

Conclusion

          We hold that the trial
court did not abuse its discretion in denying habeas corpus relief.  We
therefore affirm the judgment of the trial court.

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Judges Jennings,
Hanks, and Bland.









[1]
The trial court properly admonished J.A.L. as to
the effect of his plea, including the punishment range and the possibility of
parole.  We analyze J.A.L.’s argument, however, in the context of his claim
that his misapprehension is evidence that trial counsel was ineffective in
failing to request a hearing on his mental fitness.  





[2]
The record also contains conflicting evidence
concerning whether J.A.L.’s parents received adequate notice of the plea
hearing, and accordingly, we decline to disturb the trial court’s ruling based
on that issue.