**AFFIRMED and Opinion Filed August 27, 2013.**



In The
**Court of Appeals
Fifth District of Texas at Dallas**

**No. 05-13-00679-CR**

**EX PARTE BRENDA MARIE SANCHEZ**

**On Appeal from the 194th Judicial District Court
Dallas County, Texas
Trial Court Cause No. WX12-90067-M**

## MEMORANDUM OPINION

Before Justices Lang, Myers, and Evans
Opinion by Justice Evans

Brenda Marie Sanchez appeals the trial court's order denying her application for writ of habeas corpus. In five issues, appellant asserts the trial court erred in denying relief upon her application because she is actually innocent, she received ineffective assistance of counsel, and her guilty plea was involuntary. We affirm the trial court's order.

### BACKGROUND

Appellant is a Mexican citizen brought to the United States when she was two years old. She is the mother of two American citizens including the complainant in this case, A.M.

In 2009, appellant left A.M., who was then eleven months old, in a hot car while appellant shopped at the Home Depot. A passerby saw the child in the car and called police. Appellant was charged with child abandonment. Appellant entered an open guilty plea to the offense and signed a judicial confession. During the sentencing hearing, appellant testified she did not intentionally leave A.M. in the car: "It was just—it was a mistake. . . . I didn't

intentionally do it. And I believe that it can happen to anybody." Appellant admitted it was eighty-three degrees when she went into the store, that witnesses said they were planning to break the window of the car before they realized it was unlocked, that A.M. was sweating, and she was treated by paramedics at the scene. Appellant admitted that witnesses said the child was alone in the car for twenty to twenty five minutes although appellant testified she was only inside the store for five to ten minutes. When the trial court asked her to clarify what she meant when she said she did not intentionally abandon A.M., appellant explained that she and her husband, Ernesto Medina, had been arguing about whether she would take A.M. with her and stop by the Home Depot to buy Ernesto a pair of work gloves. Appellant did not want to run the errand because she was late for work and fearful of being fired. Appellant testified that while she was using the bathroom, Ernesto placed A.M. in the car without telling her. Appellant was unaware A.M. was asleep in the vehicle until she came back out of the store. After hearing appellant's testimony and the testimony of appellant's parenting counselor, the trial court deferred adjudication of appellant's guilt, placed her on community supervision for five years, and assessed a $1,000 fine.

Appellant filed her writ application to complain she is actually innocent, she received ineffective assistance of counsel, her plea was involuntary, and the trial court accepting her plea despite her claim of innocence violated her right to due process of law. The record before the trial court contained affidavits from appellant, Ernesto, and counsel.

Appellant's affidavit recounts she met with counsel twice. During their first meeting at a McDonalds restaurant, appellant told counsel that she did not intentionally leave A.M. in the car, that she did not want to be deported, and that she did not want to go to jail because she was pregnant at the time. Counsel told appellant there was a "50/50" chance she would be convicted

2

and sent to prison if she went to trial. Counsel never told her she would be deported if she received deferred adjudication.

During their second meeting, in the courthouse right before the plea, counsel went over the plea papers and assured her she would not be deported if she "took probation." Counsel told her that pleading guilty for deferred adjudication community supervision would be her "best choice."

During the plea hearing, when the trial court admonished her she would be deported if she pleaded guilty for deferred adjudication, she looked at counsel and he "shook his head." After the plea hearing, when a probation officer told her she might be deported, she called counsel who again assured her that the probation would not cause her to be deported but that anyone could call and get her deported. Appellant asserts she did not learn that she was subject to mandatory deportation until she consulted with an immigration attorney after her sentencing. Appellant also learned after sentencing that but for her guilty plea, she would be eligible for the Deferred Action for Childhood Arrivals program designed to help aliens achieve citizenship who were brought to the United States as children.

Appellant averred she told counsel repeatedly that she did not intentionally leave her daughter in the car. She had told counsel about the argument with Ernesto which continued on the phone during her entire trip to Home Depot and the circumstances that caused her to leave the child in the car unintentionally.

Ernesto's affidavit relates briefly that the couple were arguing and while appellant was in the bathroom, he put A.M. in her car seat behind the driver's seat of appellant's car. Ernesto did not recall telling appellant that A.M. was in the car and it never occurred to him to tell her.

Counsel then filed a lengthy responsive affidavit contending appellant's immigration issues and the possibility of her deportation were a "central focus" of their conversations.

3

Counsel averred appellant was well aware of the immigration consequences of her plea. Counsel related that the police report shows appellant was handed over to Immigration and Customs Enforcement (ICE) after her arrest for the offense. Appellant informed counsel that she had been deported voluntarily, had been barred from re-entry to the United States, and had then re-entered the country illegally. Counsel had advised appellant to seek advice from an immigration attorney but she had declined. Counsel advised appellant that the case was a deportable offense and would have "serious adverse effects" if she ever sought to adjust her immigration status. Counsel informed appellant there would be no difference for immigration purposes between deferred adjudication and a conviction. Counsel told her that, in his experience, the probation department does not contact ICE about deporting probationers. Counsel believes his advice proved accurate because appellant has not been detained and deported in the three years she had been on probation at the time of the writ proceedings. Counsel believes appellant perhaps misconstrued his observation about what the probation department would likely do and believed he meant she would not be deported if she was placed on community supervision. Counsel denied telling appellant she would not be deported if she took "deferred probation." Counsel averred that no offer of deferred adjudication was ever made but he did feel it was a strong likelihood she would receive deferred adjudication if she entered an open plea.

Regarding the facts of the case, counsel related appellant kept him from fully investigating the case by refusing to allow him to interview Ernesto. Counsel claims appellant told him Ernesto "did not want to be involved." Counsel asked her to bring Ernesto to the plea hearing but she told counsel Ernesto did not want to participate and would not be coming. To counsel's knowledge, Ernesto never attended any court date and counsel never met him.

Counsel related he understood appellant was claiming that "she got in the car totally unaware that the child was in the car seat directly behind the driver's seat." Counsel viewed

4

appellant's "story" as "thin" in that it contained "sufficient elements" to show she did not intend to abandon A.M. but it was uncorroborated "except for the husband's testimony." Counsel wanted to walk through what happened with appellant at the Home Depot and interview Ernesto but appellant refused. Counsel thought the State had sufficient evidence to convict appellant and he admitted advising her that he thought she had a 50/50 chance at trial.

By the time of his third meeting with appellant, counsel had learned the facts of the case, how she had been deported and returned, they had reviewed the police report, and she had rebuffed his request to continue the investigation further. He also inquired whether she had consulted immigration counsel and she replied that she would not because she could not afford it.

Counsel discussed a plea with the prosecutor who offered a plea bargain under which appellant would spend three years in prison. The prosecutor refused to recommend probation but would consent to allowing appellant to enter an open guilty plea. Appellant refused to consider the three-year prison deal.

Counsel discussed the possibility of trial with appellant but he considered the option "very problematic" because it would extend the case at a time when she was pregnant and could possibly result in her having her child in federal detention or out of the country, could result in a prison sentence, and appellant was afraid of going back to jail and being deported because of her immigration status and illegal re-entry. As counsel explained, "By going to trial, she was risking her freedom and the birthright of her unborn child to be born in this country." Counsel's impression was appellant wanted the "proceedings over as quickly and as painlessly as possible." Counsel discussed the pitfalls of going to trial and appellant "recoiled at the notion of going to trial." Counsel states the option to enter an open guilty plea was appellant's best choice. Counsel thought appellant's decision to forego the trial option was based on her pregnancy and the immigration issues she faced. Both counsel and appellant were concerned that a trial and

5

cross-examination might reveal her current immigration issues and result in her arrest and deportation.

Counsel described his trial strategy as having two objectives: to have appellant placed on community supervision and to allow her to leave the courtroom without being detained for being in the country illegally. He wanted to keep her testimony about immigration matters to a minimum including asserting her Fifth Amendment rights if necessary. When the trial court admonished her about the deportation consequences of her plea, "she buckled a little" and counsel supported her by placing a hand on her shoulder and giving her a nod. Counsel admitted that appellant called him with concerns about what a probation officer told her about deportation. He swore he advised her that the probation office policy was not to turn people over to ICE.

After counsel filed his affidavit, appellant filed a supplemental response affidavit in which she denied counsel's averment that she prohibited him from speaking with Ernesto. Appellant swore Ernesto accompanied her to meet counsel at McDonalds and was present in the courtroom for her sentencing hearing. According to appellant, Ernesto was always willing to testify. Appellant stated counsel never discussed immigration consequences of the plea with her and never advised her to consult an immigration attorney. Counsel then filed his own supplemental affidavit reiterating that he had asked appellant for permission to interview Ernesto, that Ernesto was not present at McDonalds, and that Ernesto never offered any support to appellant or to counsel and never offered to testify.

Without conducting a hearing, the trial court issued findings of fact and conclusions of law rejecting appellant's contentions and denying relief on her application. In its findings, the trial court found appellant had not presented any new evidence of actual innocence, that she entered her guilty plea freely and voluntarily, and that sufficient evidence substantiated her guilt. Regarding appellant's allegations of ineffective assistance of counsel, the trial court found that

6

counsel's representations in his affidavit were credible and appellant did not receive ineffective assistance. The trial court concluded appellant had not been denied any rights under the federal or state constitutions.

## APPLICABLE LAW

An applicant seeking habeas corpus relief must prove her claim by a preponderance of the evidence. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *Ex parte Scott*, 190 S.W.3d 672, 673 (Tex. Crim. App. 2006) (per curiam). In reviewing the trial court's order denying habeas corpus relief, we view the facts in the light most favorable to the trial court's ruling and we will uphold the trial court's ruling absent an abuse of discretion. *Kniatt*, 206 S.W.3d at 664. In an article 11.072 habeas proceeding, the trial judge is the sole finder of fact. *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013). We defer to the trial court's findings when they are supported by the record. *Ex parte Harrington*, 310 S.W.3d 452, 457 (Tex. Crim. App. 2010). We defer to the trial court's assessment of credibility even when the assessment is based upon affidavits. *Manzi v. State*, 88 S.W.3d 240, 242–44 (Tex. Crim. App. 2002). We defer to the trial court's application of the law to the facts, if the resolution of the ultimate question turns on an evaluation of credibility and demeanor. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003) (per curiam), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). If the resolution of the ultimate question turns on an application of legal standards, we review the determination de novo. *See id*.

## ACTUAL INNOCENCE

In her first and second issues, appellant contends the trial court erred and abused its discretion in denying her writ application because she is actually innocent of the offense for which she was convicted. It is possible to raise two types of actual innocence claims: *Herrera*

7

claims and *Schlup* claims. *See generally Schlup v. Delo*, 513 U.S. 298 (1995); *Herrera v. Collins*, 506 U.S. 390 (1993). In her first two issues, appellant raises both types of claims.

A *Herrera* claim of actual innocence is a bare claim of actual innocence in which the applicant must show (1) newly discovered evidence shows unquestionably that she did not commit the offense and (2) she has shown by clear and convincing evidence that no reasonable juror would have convicted her in light of the new evidence. *Ex parte Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996). Evidence is considered "newly discovered" for purposes of making a *Herrera*-type claim if it was not known to the applicant at the time of the trial, plea, or post-trial motions and could not have been known to the applicant even with the exercise of due diligence. *Ex parte Brown*, 205 S.W.3d 538, 545 (Tex. Crim. App. 2006). Establishing a claim of actual innocence is a Herculean task that requires the applicant to overcome the presumption that the conviction is valid. *Id*. Habeas relief is not available for claims already litigated at trial, in post-trial motions, or on direct appeal. *Id*. at 546.

A *Schlup*-type claim of innocence arises when an applicant makes an assertion of new evidence of innocence that does not itself give rise to a claim for relief but is entwined with constitutional error at trial. *Ex parte Franklin*, 72 S.W.3d 671, 675 (Tex. Crim. App. 2002). *Schlup*-type claims typically arise in cases where a defendant is procedurally barred from making a claim of constitutional error independently. *See Schlup*, 513 U.S. at 316; *Ex parte Skelton*, No. 04-12-00066-CR, 2013 WL 3455583, at *13, n. 4 (Tex. App.—San Antonio July 10, 2013, pet. ref'd). If the defendant "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316. To prevail, the applicant must establish that the evidence establishes sufficient doubt about the applicant's guilt

to justify the conclusion that the conviction is a miscarriage of justice unless it was the product of a fair trial. *Id*. The applicant must present reliable evidence of innocence that was not presented at trial and establish that, in light of the new evidence, it is more likely than not that no reasonable juror would have rendered a guilty verdict beyond a reasonable doubt. *Ex parte Reed*, 271 S.W.3d 698, 733 (Tex. Crim. App. 2008).

Appellant contends she has shown she did not intentionally abandon A.M. and is therefore actually innocent. The only new evidence appellant presented was Ernesto's affidavit stating he could not recall telling appellant that he had placed A.M. in the back seat of her car behind the driver's seat and it never occurred to him to tell her. Appellant's affidavit states she did not know the child was present in the car. Appellant attempts to argue that this is new evidence showing she did not intentionally and voluntarily abandon A.M. For her *Schlup* claim, appellant argues counsel's failure to interview Ernesto constituted ineffective assistance that prevented her from using Ernesto's testimony at trial.

The trial court entered a finding that appellant had not presented any new evidence of her innocence to make either a *Herrera* or *Schlup* claim. Nothing appellant presents undermines the trial court's finding. Appellant does not explain why she should not have known at the time of her plea whether or not her husband told her the child was in the car. In her affidavit, appellant avers Ernesto accompanied her to court to enter her plea. Furthermore, in her exchange with the trial court during the plea hearing, appellant asserted she did not abandon the child intentionally because she did not know Ernesto had placed the child in the car. Nothing appellant presented to the trial court constitutes newly discovered evidence, clear and convincing proof of appellant's actual innocence sufficient to undermine her plea and judicial confession, or evidence that there was a miscarriage of justice. *See Franklin*, 72 S.W.3d at 675. For reasons we will develop more fully in our discussion of appellant's third issue alleging ineffective assistance of counsel, the

9

conflicting accounts of appellant and counsel regarding whether Ernesto was available to be interviewed, a conflict the trial court resolved in counsel's favor, does not meet appellant's burden to show ineffective assistance of counsel.

Appellant also contends the trial court erred in not conducting a hearing to develop her allegations of ineffective assistance of counsel and actual innocence. The code of criminal procedure, however, does not require the trial court to conduct an evidentiary hearing before ruling on appellant's writ application. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 § 6(b) (West 2005) (allowing the trial court in ruling on the writ to order affidavits, depositions, interrogatories, a hearing, or to rely upon the trial court's own personal recollection of events). The trial court may forego a hearing and rely upon affidavits in making its determination. *Ex parte Fassi*, 388 S.W.3d 881, 886 (Tex. App. —Houston [14th Dist.] 2012, no pet.); *Ex parte Cummins*, 169 S.W.3d 752, 757 (Tex. App. —Fort Worth 2005, no pet.).

In the present case, the record contains two affidavits from appellant and counsel and one affidavit from Ernesto. The reporter's record from the sentencing hearing and the plea papers were also before the trial court. Nothing in the sentencing hearing reflects any confusion or misleading advice that would require a hearing to develop additional evidence regarding counsel's performance. Nothing in appellant's and Ernesto's affidavits demonstrates the necessity of a hearing to develop newly discovered evidence of actual innocence. Appellant contends there is no evidence in the record to support counsel's assertion in his affidavit that she voluntarily deported herself for a period of time. The record does contain the police narrative stating appellant was turned over to ICE after her arrest. Although appellant hotly disputed many of counsel's sworn assertions, she chose not to contradict his account of her deportation.

Appellant further contends there is a conflict between her and counsel's affidavits about whether Ernesto was willing to aid the defense. Even if appellant's allegations were true,

Ernesto's affidavit does not show he has evidence that would prove unquestionably appellant's innocence.  We conclude the trial court did not abuse its discretion in deciding the merits of appellant's application without a hearing.  We overrule appellant's first and second issues.

INEFFECTIVE ASSISTANCE OF COUNSEL

In her third issue, appellant contends she received ineffective assistance of counsel in that counsel failed to investigate the law relevant to her case, failed to advise her that intent was a necessary element of the offense, and advised her to enter a guilty plea for community supervision even though she told him she did not intend to leave A.M. in the car and expressed her innocence in the plea hearing.  As a result of counsel's alleged ineffective assistance, appellant contends her guilty plea was involuntary.

A plea of guilty is not voluntary if it was made as a result of ineffective assistance of counsel.  *Ex parte Moussazadeh*, 361 S.W.3d 684, 689 (Tex. Crim. App. 2012).  To obtain habeas corpus relief on the ground of ineffective assistance of counsel, appellant must show (1) counsel's performance fell below an objective standard of reasonableness; and (2) a reasonable probability exists that, but for counsel's errors, the result would have been different.  *See Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 1482 (2010); *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).  A defendant has the right to effective assistance of counsel during plea proceedings.  *Harrington,* 310 S.W.3d at 458.  In the context of a complaint about counsel's plea advice, appellant must show (1) counsel's plea advice did not fall within the range of competence demanded of attorneys in criminal cases and (2) there is a reasonable probability that, but for counsel's deficient performance, appellant would have insisted on going to trial rather than accepting the offer and pleading guilty.  *Id.*

To satisfy her burden under the first prong of the test, appellant must overcome a strong presumption that counsel's performance fell within the wide range of reasonable professional

assistance and might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Harrington,* 310 S.W.3d at 458. Appellant bears the burden of proving counsel was ineffective by a preponderance of the evidence. See *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The reasonableness of counsel's performance is judged under prevailing professional norms. *Strickland*, 466 U.S. at 688. Our review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. *Strickland*, 466 U.S. at 689; *Thompson*, 9 S.W.3d at 813. Under the second prong of the test, a reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812.

Appellant's claims of ineffective assistance of counsel depend entirely upon the credibility of her account of what transpired between herself and counsel. As part of its findings, the trial court found counsel's affidavit to be credible and recited counsel's representations of his investigation of the facts, of appellant's limitation on his access to Ernesto, and of the considerations that motivated appellant to forego a trial and enter a plea of guilty. The trial court notes in its findings that appellant did not raise any complaints about counsel's investigation before the trial court, that the grant of deferred adjudication "appear[ed] to be the objective of [appellant] and trial strategy of trial counsel," and that although appellant did describe the incident as a mistake during her sentencing testimony and testify that she did not intentionally commit the offense, she never requested permission to withdraw the plea and the trial court considered her assertions as mitigating evidence in her favor.

In its brief, the State notes counsel's affidavit recounts that counsel warned appellant that if she proceeded to trial, the State could amend the indictment to allege the other possible mental states of recklessness and negligence. Thus, the State suggests, the record shows counsel understood the mental state element of the offense and discussed it with appellant.

12

Viewed in the light most favorable to the trial court's ruling and with the proper deference to the trial court's findings and assessment of credibility, we conclude appellant has not shown counsel failed to investigate the law, misadvised her about the elements of the offense, or misadvised her about the courses of action available to her. Rather, the record shows appellant made a rational and ultimately successful choice to pursue the option of an open guilty plea in the hope of obtaining deferred adjudication. The reporter's record from the sentencing hearing shows what appears to be a well-planned, skillfully executed, and successful trial strategy to accept responsibility for her act and explain the circumstances so she might receive deferred adjudication for her punishment.

Accordingly, we cannot conclude appellant met her burden to show counsel's performance fell below an objective standard of reasonableness or that counsel's plea advice fell outside the range of competence demanded of attorneys in criminal cases. *See Strickland*, 466 U.S. at 687–88; *Harrington,* 310 S.W.3d at 458. Appellant's failure to prove one prong negates the need to consider the other prong. *See Strickland*, 466 U.S. at 697; *Lopez v. State*, 343 S.W.3d 137, 144 (Tex. Crim. App. 2011). We overrule appellant's third issue.

### VIOLATION OF DUE PROCESS OF LAW

In her fourth issue, appellant contends the trial court abused its discretion when it interpreted her fourth ground for relief in her writ application as a challenge to the sufficiency of the evidence rather than as an allegation that her right to due process of law was violated when the trial court accepted her guilty plea despite her testimony that she acted without the necessary intent to commit the offense. Appellant contends the conflict between her written judicial confession admitting the offense and her oral testimony denying intent renders the evidence insufficient to support the trial court's judgment. Appellant asserts the conflicting written and oral representations mean there is no evidence to support the conviction which is therefore void.

13

Appellant asserts she did not have the necessary intent to commit the offense and her plea was induced by misrepresentations from counsel.

Due process requires that a guilty plea be entered knowingly, intelligently, and voluntarily. *Kniatt*, 206 S.W.3d at 664. A guilty plea is valid if "the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A guilty plea is not invalid merely because it is accompanied by a protestation of innocence. *Id.* at 38. When a guilty plea is entered before a trial court and evidence is entered that makes the defendant's innocence evident or fairly raises an issue of innocence, the trial court need not withdraw the plea but may instead consider all the evidence before it and as trier of fact find the defendant guilty or acquit the defendant. *See Moon v. State*, 572 S.W.2d 681, 682 (Tex. Crim. App. 1978); *see also Aldrich v. State*, 104 S.W.3d 890, 893–94 (Tex. Crim. App. 2003). A judicial confession, standing alone, is sufficient evidence to sustain a conviction upon a guilty plea. *Dinnery v. State*, 592 S.W.2d 343, 353 (Tex. Crim. App. [Panel Op.] 1979) (op. on reh'g). A conviction without any supporting evidence may be void. *See Nix v. State*, 65 S.W.3d 664, 668 (Tex. Crim. App. 2001).

In its findings, the trial court found appellant's allegation of a denial of due process of law actually challenged the sufficiency of the evidence to support the judgment. The trial court further found a challenge to evidentiary sufficiency was not cognizable in habeas proceedings and appellant's judicial confession was sufficient to support the trial court's judgment. We agree with the trial court that appellant's complaint challenges the sufficiency of the evidence. We further agree that appellant's written judicial confession is sufficient to substantiate her guilt. *See Dinnery*, 592 S.W.2d at 353. During the sentencing hearing, after appellant testified she did not intend to leave A.M. alone, the trial court solicited a further explanation from her about her intent. The trial court, as fact finder, considered all the evidence

14

and drew its conclusion. We cannot conclude the trial court abused its discretion in concluding appellant entered a voluntary guilty plea or in determining that appellant's fourth ground for habeas relief attacked the sufficiency of the evidence of her guilt. *See Moon*, 572 S.W.2d at 682. We overrule appellant's fourth issue.

### DEPORTATION

In her fifth issue, appellant contends trial counsel rendered ineffective assistance of counsel in failing to advise her of the deportation consequences of her plea thus rendering her plea involuntary. Appellant's contention depends critically upon the application of the United States Supreme Court's opinion in *Padilla v. Kentucky*. However, in *Chaidez v. United States*, 133 S.Ct. 1103 (2013) the Supreme Court determined that *Padilla* should be interpreted as a new rule and would not apply retroactively to cases where a conviction was final prior to March 31, 2010, the date *Padilla* was issued. *See Chaidez*, 133 S.Ct. at 1113. Subsequently, the Texas Court of Criminal Appeals determined that Texas would not grant retroactive effect to *Padilla* as a matter of state law. *See Ex parte De Los Reyes*, 392 S.W.3d 675, 679 (Tex. Crim. App. 2013).

Although she entered her plea and was placed on deferred adjudication prior to the issuance of *Padilla*, appellant contends her conviction was not final within the meaning of *Chaidez* and *De Los Reyes* because she was on deferred adjudication community supervision at the time *Padilla* was issued. The Court of Criminal Appeals recently rejected appellant's position in *State v. Guerrero*, 400 S.W.3d 576, 587–88 (Tex. Crim. App. 2013) (concluding defendant had a "final conviction" for purposes of determining application of *Padilla* at the time he was placed upon deferred adjudication in 1998). Thus we do not apply *Padilla* in considering whether counsel provided ineffective assistance of counsel in advising appellant about the deportation consequences of her plea. *See De Los Reyes*, 392 S.W.3d at 679.

15

Under the pre-*Padilla* law in effect at the time of appellant's plea, the possibility of deportation was considered a collateral consequence of a plea. *See Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997). The Sixth Amendment right to effective assistance of counsel in criminal prosecutions did not extend to collateral consequences of the prosecution. *Id*. Thus, whether counsel gave appellant proper advice regarding her possible deportation does not implicate her Sixth Amendment right to effective counsel. *Id*.

Moreover, even if we did apply *Padilla*,[1] the record shows appellant understood the deportation consequences of her plea. Counsel's affidavit states appellant was already voluntarily deported once as a result of her arrest in this case and she was barred from re-entering the country. Counsel averred he advised appellant that her case was "a deportable offense." Much of counsel's trial strategy revolved around trying to minimize the possibility that she might be immediately deported because of the conviction. Furthermore, the trial court's written admonishment to appellant states plainly that appellant's plea "may, and under current Federal Immigration rules *is almost certain to*, result in your removal, deportation, exclusion from the admission to the United States, or denial of naturalization." Appellant acknowledged in writing that her plea "will probably result in my removal or deportation from the United States, exclusions from admission to the United States, or denial of naturalization under Federal Law." Before pronouncing sentence upon her, the trial court inquired whether appellant was a United States citizen and upon learning she was not, the trial court informed her it was "almost certain"

---

[1] In *Padilla*, the Supreme Court held that inaccurate advice regarding a non-citizen client's potential deportation may constitute ineffective assistance of counsel. *See Padilla*, 130 S. Ct. at 1482. When federal immigration law clearly specifies that the defendant will be deported, counsel must affirmatively and correctly advise the defendant about immigration consequences of the plea. *Id*. It is undisputed that appellant's plea of guilty and placement on deferred adjudication for the offense of child abandonment constitutes a deportable conviction under federal immigration law. *See* 8 U.S.C.A. § 1101(a)(48)(A) (2013); 8 U.S.C.A. §1227(a)(2)(E)(i) (2008).

she would be deported, excluded from admission to the country, or denied naturalization. Appellant replied, "I understand."

Thus, the record shows counsel delivered the appropriate deportation advice and appellant was aware she faced deportation if she entered her plea. Appellant did not meet her burden to show counsel's performance fell below an objective standard of reasonableness or that counsel's plea advice about deportation fell outside the range of competence demanded of attorneys in criminal cases. *See Strickland*, 466 U.S. at 687–88; *Harrington,* 310 S.W.3d at 458.

Finally, we again take note of counsel's affidavit in which counsel describes in detail the practical considerations that drove appellant to forego a trial and enter a guilty plea. Because the record shows appellant understood she faced deportation and her decision to enter a guilty plea was motivated by sound strategy, we conclude appellant has not shown by a preponderance of the evidence that there is a reasonable probability that, but for counsel's allegedly deficient performance, she would have insisted on going to trial rather than entering her open guilty plea. *Harrington,* 310 S.W.3d at 458. We overrule appellant's fifth issue.

We affirm the trial court's order denying relief on appellant's application for writ of habeas corpus.

/David Evans/
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
130679F.U05

17



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EX PARTE BRENDA MARIE SANCHEZ

No. 05-13-00679-CR

On Appeal from the 194th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. WX12-90067-M.
Opinion delivered by Justice Evans.
Justices Lang and Myers participating.

Based on the Court's opinion of this date, the order of the trial court denying relief on appellant's application for writ of habeas corpus is **AFFIRMED**.

Judgment entered this 27th day of August, 2013.

/David Evans/
DAVID EVANS
JUSTICE